IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-03258-PAB-KMT

KATHY WORNICKI, and
EDWARD LAINE, on behalf of themselves and all others similarly situated,

        Plaintiffs,

vs.

BROKERPRICEOPINION.COM, INC.;
FIRST VALUATION, LLC;
FIRST VALUATION SERVICES, LLC;
FIRST VALUATION TECHNOLOGY, LLC; and
CARTEL ASSET MANAGEMENT, LLC.

        Defendants.

---

**SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**

---

## I. INTRODUCTION

1.      Plaintiffs Kathy Wornicki and Edward Laine bring this class action against

Brokerpriceopinion.com, Inc., First Valuation, LLC, First Valuation Services, LLC, First

Valuation Technology, LLC, and Cartel Asset Management, LLC to recover damages and other

relief available at law and in equity to remedy Brokerpriceopinion, First Valuation, and Cartel

Asset Management's breach of contract, which is detailed below.

2.      Plaintiffs and proposed Class Members are or were licensed real estate

professionals who performed real estate evaluations on behalf of Brokerpriceopinion. Pursuant to

their agreement, Defendants are obligated to pay real estate professionals for work they

performed on their behalf within 60 days. Defendants, however, have unlawfully refused to pay

Plaintiffs and other real estate professionals in accordance with these payment terms, depriving

Plaintiffs and proposed Class Members of funds they earned and to which Plaintiffs and Class Members are rightfully entitled.

## II. PARTIES

3.      Plaintiff Kathy Wornicki is an individual real estate salesperson licensed to sell real estate in Florida and who resides in Sumter County, Florida.

4.      Plaintiff Edward Laine is an individual real estate salesperson licensed to sell real estate in Washington and who resides in King County, Washington.

5.      Defendant Brokerpriceopinion.com, Inc. ("Brokerpriceopinion") is a Colorado corporation with its principal place of business in Westminster, Colorado.

6.      Defendant First Valuation, LLC is a Colorado corporation with its principal place of business in Westminster, Colorado.

7.      Defendant First Valuation Services, LLC is a Colorado corporation with its principal place of business in Westminster, Colorado.

8.      Defendant First Valuation Technology, LLC is a Colorado corporation with its principal place of business in Westminster, Colorado.

9.      Defendant Cartel Asset Management, Inc. is a Colorado corporation with its principal place of business in Westminster, Colorado.

10.      On information and belief, Defendants Brokerpriceopinion.com, Inc., First Valuation, LLC, First Valuation Services, LLC, First Valuation Technology, LLC, and Cartel Asset Management, Inc. are alter egos of each other, and a unity of interest and ownership exists between the Defendants such that any separateness has ceased to exist, there is a commingling of property rights or interests such that Defendants function as one, and Defendants have acted in concert in doing the things alleged herein. In addition, upon information and belief, the conduct that gives rise to the claims for relief alleged herein was committed by, or on behalf of, each Defendant and harmed Plaintiffs and the proposed Class. Therefore, to avoid an unjustified loss

to Plaintiffs and the Class, or to avoid oppression, fraud, and inequity, recognition of Defendants' separate corporate status should be disregarded.

11.     Defendants share a common owner and founder, Walter Coats. Defendants are all located in the same building, at 8700 Turnpike Drive, Suite 300, Westminster, CO 80031. First Valuation is an official trade name for Brokerpriceopinion.com, Inc., and Defendant Brokerpriceopinon.com identifies itself as "a First Valuation Company." First Valuation and Brokerpriceopinion provide an identical contact phone number on their respective websites. First Valuation and Brokerpriceopinon also offer nearly identical services. *Compare* http://www.firstvaluation.com/broker-price-opinions/ (offering broker price opinions) (last visited November 12, 2013) and https://www.brokerpriceopinion.com/Brochure/Products/ (offering broker price opinions) (last visited November 12, 2013).  Defendant Cartel Asset Management, Inc., like Defendants Brokerpriceopinion and First Valuation, is in the business of providing broker price opinions through a nationwide network of licensed real estate professionals.  Upon information and belief, Defendant Cartel Asset Management has been in operation since 1994.

### III. JURISDICTION AND VENUE

12.     This Court has original jurisdiction over these claims under the provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy for the Class exceeds $5 million exclusive of interest and costs, and Plaintiffs are citizens of a state different from Defendants. Specifically, based on data in Defendants' records, the aggregate amount in controversy for the Class is at least $5,096,191.

13.     Additionally, Defendants do business in and have their principal place of business in Westminster, Colorado, in Adams County, and Defendants have obtained the benefits of the laws of the State of Colorado.

14.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because it is the district in which Defendants reside and transact business, and it is the locale where a substantial part of the events or omissions giving rise to the claim occurred.

## IV. FACTUAL BACKGROUND

15.     Defendants operate the website Brokerpriceopinion.com, which provides real estate valuation data, including "industry-leading Broker Price Opinions, AVM's and Appraisals." To provide its "industry-leading" Broker Price Opinions, Defendants advertise that they use a network of over 95,000 licensed brokers and appraisers.

16.     Licensed real estate salespeople, appraisers, and other professionals must sign up on Defendants' website. Once they have agreed to provide Broker Price Opinions on Defendants' behalf and completed the paperwork required by Defendants, Defendants sends their licensed real estate professionals work orders. The work orders describe the subject property to be appraised and provide any special instructions. For each work order performed on behalf of Defendants, Defendants agrees to pay a set amount of at least $25.00 and up to more than $100.00.

17.     By signing up to provide broker price opinions, licensed real estate professionals are informed that work orders are paid 60 days after they have been reviewed and approved by Defendants' quality control department and shipped to the client. Pursuant to their payment terms, Defendants are obligated to pay their real estate professionals 60 days after submitted work orders are shipped to clients. *See* https://www.brokerpriceopinion.com/Brochure/Network/ (last visited November 12, 2013).

18.     Defendants have refused to pay their real estate professionals in accordance with their payment terms and have retained the revenues Defendants charged clients for these services for periods longer     than permitted pursuant to Defendants' payment terms.

19.     More than 15,600 licensed real estate professionals included in Defendants' network(s) are either unpaid for the services they performed or Defendants are currently late in paying them and therefore have not paid them in accordance with the payment terms.

20.     Defendants have engaged in unfair practices and breached their contractual obligations to Defendants' licensed real estate professionals by failing to pay them in accordance with Defendants' payment terms.

21.     Upon information and belief, Plaintiffs allege that their experiences, described below, are representative of Defendants' disregard of the law and their contractual obligations.

22.     More than 15,600 licensed real estate professionals have performed services on Defendants' behalf, but have not been paid in accordance with Defendants' payment terms. Defendants owe licensed real estate professionals in their network(s) amounts ranging from several hundred dollars to several thousand dollars.

23.     Online complaint websites are filled with dozens of complaints regarding real estate agents who, like Plaintiffs, have completed work orders for Defendants and have not been paid.[1]

## V. PLAINTIFFS' ALLEGATIONS

Plaintiff Wornicki

24.     Plaintiff Kathy Wornicki is a licensed real estate salesperson in Florida. In or around April 2012, Plaintiff signed up with Defendants to provide broker price opinions, including completing all paperwork and forms required by Defendants.

---

[1] *See, e.g.,*

http://www.trulia.com/voices/Agent2Agent/Doew_anyone_know_about_BrokerPriceOpinion_com_and_-233534 (last visited Nov. 18, 2013);

http://www.complaintsboard.com/complaints/brokerpriceopinioncom-westminster-colorado-c411099.html (last visited Nov. 18, 2013)

25.     In or about early April 2012, Plaintiff Wornicki received her first work order to perform an appraisal on Defendants' behalf. Plaintiff Wornicki completed that work order in accordance with all of Defendants' terms and conditions.

26.     Between April 2012 and January 12, 2013, Plaintiff Wornicki completed approximately 29 work orders on Defendants' behalf. For example, Plaintiff Wornicki completed work orders due on the following dates: April 5, 2012 for $35; May 3, 2012 for $25; May 23, 2012 for $35; July 10, 2012 for $50; July 10, 2012 for $50; August 18, 2012 for $25; August 23, 2012 for $25; August 24,2012 for $25; September 12, 2012 for $25; September 14, 2012 for $45; and December 21, 2012 for $75. Defendants have not paid Plaintiff Wornicki for any of these work orders.

27.     Defendants routinely failed to remit payment to Plaintiff Wornicki in accordance with the contractual agreement to make payments by 60 days after the appraisal is provided to the client. As of November 12, 2013, Defendants have failed to remit payment to Plaintiff Wornicki for all of the 29 work orders she performed. On information and belief, Plaintiff Wornicki is owed at least $880 for work orders she performed.

28.     Pursuant to Defendants' agreement, Plaintiff Wornicki should have been paid within 60 days of each work order performed. Since her first work order was complete on April 5, 2012, Defendants' first payment to Plaintiff Wornicki was due on June 5, 2012, but she has still not been paid for providing this service.

29.     Plaintiff Wornicki contacted Defendants on numerous occasions to notify Defendants of the late payments. For example, on January 21, 2013 Plaintiff Wornicki sent a payment inquiry regarding Defendants' past due payments. Defendants responded on February 12, 2013 that they would provide her with a date for payment in approximately a week. On September 3, 2013, she sent another payment inquiry requesting payment, but did not receive a response.

30.     To date, Defendants have not responded or paid Plaintiff Wornicki for the past due amounts. Currently, Defendants are over 520 days past due on payments to Plaintiff Wornicki for over $880.

Plaintiff Laine

31.     Plaintiff Edward Laine is a licensed real estate salesperson in Washington. In or around September 2010, Plaintiff Laine signed up with Defendants to provide broker price opinions, including completing all paperwork and forms required by Defendants.

32.     In or about September 2010, Plaintiff Laine received his first work order to perform an appraisal on Defendants' behalf. He completed that work order in accordance with all of Defendants' terms and conditions.

33.     Between September 2010 and January 2013, Plaintiff Laine completed over 250 work orders on Defendants' behalf for amounts ranging from $15 to more than $60.  Plaintiff Laine employs licensed real estate professionals and staff who have assisted him with performing and/or completing work orders on Defendants' behalf.

34.     Defendants routinely failed to remit payment to Plaintiff Laine in accordance with the contractual agreement to make payments by 60 days after the appraisal is provided to the client.  For example, in September 2011, Plaintiff Laine completed four work orders for Defendants, in October 2011 he completed six, and in November 2011 he completed five, but he received no payment until December 2012.

35.     Plaintiff Laine contacted Defendants on numerous occasions to notify Defendants of the late payments.  In December 2012, Defendants owed Plaintiff Laine $6,030.  Defendants and Plaintiff Laine agreed that Defendants would make three payments of approximately $1,600 as full payment for all work orders over 60 days late as of December 2012.  Defendants made only two of the promised three monthly payments for approximately $3,200.  Plaintiff Laine continued to complete work orders for Defendants until January 29, 2013.

36.     As of February 14, 2014, Defendants have failed to remit payment to Plaintiff Laine, and is over 60 days late, on over 150 work orders. For example, Plaintiff Laine completed 15 work orders for Defendants in July 2012 for which he has never received payment. Plaintiff Laine is owed more than $4,600 for work orders he performed.  Pursuant to Defendants' agreement, Plaintiff Laine should have been paid within 60 days of each work order performed.

37.     To date, Defendants have not paid Plaintiff Laine for the past due amounts. Currently, Defendants are in excess of 480 days past due on numerous payments owed to Plaintiff Laine and owe a total of more than $4,600.

## VI. CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a class consisting of:

> All persons and entities who have signed up with Defendants to provide Broker Price Opinions and who have not been paid for their services in accordance with Defendants' terms of payment.

Excluded from this Class are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors. Also excluded are any judges to whom this case is assigned and any member of an assigned judge's immediate family.

39.     As set forth below, the proposed Class satisfies the requirements for a class action.

40.     The definition of the Class is clear and members of the Class are easily identifiable on the basis of objective information, as Defendants maintain information regarding all persons and/or entities who are or were signed up as licensed real estate professionals (including their email addresses), and maintains information relating to all work orders performed by their real estate professionals.

41.     Class Members can be identified using information maintained by Defendants in the usual course of business and/or in the control of Defendants. Class Members can be notified of the pendency of the class action through direct mailing to address lists maintained in the usual course of business by Defendants or through email, which is the primary means of communication used by Defendants.

42.     Class Members are so numerous that individual joinder is impracticable. At least 15,600 licensed real estate professionals have not been paid in accordance with their payment terms and are therefore members of the potential Class.  The number of Class Members greatly exceeds the number for which joinder would be practicable.

43.     Common questions of law and fact predominate over the questions affecting only individual Class Members. Some of the common legal and factual questions include:

    a.     Whether Defendants breached their obligations to Plaintiffs and proposed Class Members to pay them in accordance with Defendants' payment terms;

    b.     Whether Defendants have been unjustly enriched by withholding repayment from Plaintiffs and Class Members; and

    c.     The nature and extent of relief to Plaintiffs and the Class.

44.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. The same payment terms and contractual obligations apply to each Class Member. Individual questions, if any, pale in comparison to the numerous common questions that predominate.  For example, the number of broker price opinions provided by Class Members, and the corresponding amount unpaid by Defendants, is not an individual question that predominates because the question of whether Defendants systematically breached their uniform contractual obligations to Class Members can be answered regardless of the number of opinions provided or amount owed.

45.     The injuries sustained by the Class Members flow in each instance from a common nucleus of operative facts. In each case, Defendants failed to abide by their contractual obligations, refusing to pay Defendants' network of licensed real estate professionals pursuant to Defendants' contractual terms.

46.     Class Members have been damaged by Defendants' misconduct. Class Members have not been paid for their work performed and have therefore been deprived of the use of their funds. Defendants, on the other hand, have unlawfully retained the funds, used them in the operation of their business, and have retained all interest and other gains earned off of the funds.

47.     Plaintiffs' claims are typical of the claims of the other Class Members. Both Plaintiffs are licensed real estate professionals who performed broker price opinions on Defendants' behalf through work orders. Defendants have not paid Plaintiffs for the work they performed.  Defendants have continued to earn interest on those funds, while at the same time continuing to deprive Plaintiffs of their earnings.

48.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are familiar with the basic facts underlying the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members that Plaintiffs seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and contract law and intend to and will prosecute this action vigorously.

49.     Plaintiffs' counsel has successfully prosecuted complex class actions, including consumer protection and breach of contract class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

50.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members. The relief sought per individual Class Member is small given the burden and expense of individual prosecution of the

potentially expensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for Class Members to seek redress on an individual basis.

51.     Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

52.     Defendants' conduct is uniform to all members of the Class. Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief is appropriate with respect to the Class as a whole.

## VII. FIRST CLAIM FOR RELIEF

### (Breach of Contract – On Behalf of the Class)

53.     Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

54.     Pursuant to their payment terms, Defendants promised to pay Plaintiffs and Class Members for work orders performed within 60 days of providing the service to the client.

55.     Defendants have failed or refused to pay Plaintiffs and Class Members for work performed in accordance with Defendants' contractual agreement.

56.     For example, Defendants are currently over 500 days past due on payments to Plaintiff Wornicki for work orders totaling at least $880 and more than 480 days past due on numerous payments owed to Plaintiff Laine and owe him a total of more than $4,600.

57.     Upon information and belief, Plaintiffs allege that the Class has suffered substantially the same breaches of contract.

58.     As a result of such breaches, Plaintiffs and the Class have been deprived of the funds they earned for providing appraisal and broker price opinion services on Defendants' behalf.

59.     Plaintiffs and Class Members have been and continue to be damaged by Defendants' breaches of contract, and have suffered damages in an amount to be determined at trial.

60.     Plaintiffs and the Class are entitled to legal and equitable relief against Defendants, including damages, specific performance, rescission, injunctive relief, an accounting, attorneys' fees, costs of suit, and other relief as appropriate.

## VIII. SECOND CLAIM FOR RELIEF

### (Promissory Estoppel - On Behalf of the Class)

61.     Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

62.     Defendants promised Plaintiffs and the Class that they would receive timely payment in exchange for performing services, including preparing broker price opinions, on Defendants' behalf.

63.     Defendants should have reasonably expected Plaintiffs and Class Members to perform services for Defendant based on Defendants' promises.

64.     Plaintiffs and Class Members reasonably relied on Defendants' promise of repayment to their detriment as they performed services for which they were not compensated.

65.     Injustice can only be avoided by enforcement of Defendants' promises to compensate Plaintiffs and Class Members for their services.

66.     Defendants are liable to Plaintiffs and Class Members for damages pursuant to the doctrine of promissory estoppel for the unpaid work they performed on Defendants' behalf.

67.     Plaintiffs and the Class are entitled to legal and equitable relief against Defendants, including damages, injunctive relief, an accounting, attorneys' fees, costs of suit, and other relief as appropriate.

## IX. THIRD CLAIM FOR RELIEF

### (Unjust Enrichment – On Behalf of the Class)

68.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

69.    To the detriment of Plaintiffs and members of the Class, Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful refusal to pay funds owed to Plaintiffs and the Class. Defendants continue to earn interest and receives other benefits from Plaintiffs' and the Class' funds that have been wrongfully withheld.

70.    As between the parties, it would be unjust for Defendants to retain the benefits attained by their actions. Accordingly, Plaintiffs and members of the Class seek a full accounting and restitution of Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein. Plaintiffs and the Class seek legal and equitable relief against Defendants, including damages, injunctive relief, an accounting, attorneys' fees, costs of suit, and other relief as appropriate.

## X. FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment – On Behalf of the Class)

71.    Plaintiffs reallege the preceding paragraphs as though fully set forth herein.

72.    An actual case and controversy exists between the parties, within the meaning of 28 U.S.C. § 2201, with respect to Defendants' refusal to pay Plaintiffs and Class Members for work performed in accordance with Defendants' contractual agreement.

73.    Plaintiffs and the Class are entitled to judgment declaring that the practices of Defendants are unlawful and are entitled to further relief pursuant to 28 U.S.C. § 2202, including damages, injunctive relief, an accounting, attorneys' fees, costs of suit, and other relief as appropriate.

## XI. RELIEF REQUESTED

Plaintiffs request the Court enter judgment against Defendants as follows:

A.      Determination that this action may proceed as a class action under Federal

Rule of Civil Procedure 23;

B.      Designating Plaintiffs as Class Representatives;

C.      Designating Plaintiffs' counsel as counsel for the Class;

D.      Issuing proper notice to the Class at Defendants' expense;

E.      An award of actual damages, exemplary damages, specific performance,

an accounting, equitable relief, injunctive relief, and such other relief as provided by the statutes

and law cited herein;

F.      An award of attorneys' fees;

G.      An award of costs;

H.      Pre- and post-judgment interest on any amounts awarded; and

I.      Such other relief as the Court deems just and proper.

## XII. JURY DEMAND

Plaintiffs demand a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 29th day of May, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:   /s/ Beth E. Terrell
    Beth E. Terrell
    Michael D. Daudt
    Whitney B. Stark
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 350-3528
    Email: bterrell@tmdwlaw.com
    Email:  wstark@tmdwlaw.com

- 15 -

Jeffrey A. Berens
Darby K. Kennedy
DYER & BERENS LLP
303 East 17th Avenue, Suite 810
Denver, Colorado 80203
Telephone: (303) 861-1764
Facsimile: (303) 395-0393
Email: jeff@dyerberens.com
Email:  darby@dyerberens.com

Stefan Coleman
LAW OFFICES OF STEFAN COLEMAN, LLC
201 South Biscayne Boulevard, 28th Floor
Miami, Florida  33131
Telephone: (877) 333-9427
Facsimile:  (888) 498-8946
Email: law@stefancoleman.com

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on May 29, 2014, I caused the foregoing document

entitled Second Amended Complaint and Jury Demand to be electronically filed with the Clerk

of the Court via the CM/ECF system, which will send notification of such filing to the e-mail

addresses denoted on the Court's Electronic Mail Notice List.

DATED at Seattle, Washington, this 29th day of May, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC


By:   /s/ Beth E. Terrell
         Beth E. Terrell
         Whitney B. Stark
         936 North 34th Street, Suite 300
         Seattle, Washington  98103-8869
         Telephone: (206) 816-6603
         Facsimile: (206) 350-3528
         Email: bterrell@tmdwlaw.com
         Email:  wstark@tmdwlaw.com