IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-03258-PAB-KMT

KATHY WORNICKI and
EDWARD LAINE, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

BROKERPRICEOPINION.COM, INC.,
FIRST VALUATION, LLC,
FIRST VALUATION SERVICES, LLC,
FIRST VALUATION TECHNOLOGY, LLC, and
CARTEL ASSET MANAGEMENT, LLC,

    Defendants.

# ORDER

This matter comes before the Court on defendants' Motion to Dismiss Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction or, Alternatively, to Deny Class Certification. [Docket No. 50]. The motion is fully briefed and ripe for disposition.

## I. BACKGROUND

Plaintiffs are licensed real estate professionals who claim that they performed real estate evaluations on behalf of defendant Brokerpriceopinion.com. Docket No. 45 at 1, ¶ 2.[1] Plaintiffs allege that defendants operate a website through which licensed real estate professionals sign up to provide broker price opinions. *Id.* at 4, ¶ 16. Once

---

[1] Plaintiffs also allege that defendants are alter egos of each other. *See* Docket No. 45 at 2-3, ¶¶ 10-11.

these real estate professionals have registered through defendants' website, defendants send them work orders. *Id.* These work orders describe the property to be appraised, provide specific instructions for work to be performed, and list an amount to be paid for the resulting broker price opinion, which ranges from $25 to more than $100. *Id.* Defendants inform the professionals who register with their website that work orders will be paid 60 days after they have been reviewed and approved by defendants' quality control department and are shipped to the client. *Id.* ¶ 17.

Plaintiffs allege that defendants have refused to pay them for their completed work orders. They seek to represent a putative class consisting of "[a]ll persons and entities who have signed up with Defendants to provide Broker Price Opinions and who have not been paid for their services in accordance with Defendants' terms of payment." Docket No. 45 at 8, ¶ 38. Plaintiffs allege that this class consists of "[m]ore than 15,600 licensed real estate professionals" who were not paid in accordance with defendants' payment terms. *Id.* at 5, ¶ 19. Plaintiffs also allege that, based on data in defendants' records, the aggregate amount in controversy for the proposed class is "at least $5,096,191." *Id.* at 3, ¶ 12.

Defendants claim that the Court lacks subject matter jurisdiction because plaintiffs' allegation concerning the aggregated amount in controversy improperly assumes that plaintiffs' claims are governed by a six-year statute of limitations applied to liquidated debt. Docket No. 50 at 4-5. In the alternative, defendants ask the Court to deny class certification.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Dismissal pursuant to Rule 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the complaint. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When resolving a facial attack on the allegations of subject matter jurisdiction, the Court "must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). To the extent the defendant attacks the factual basis for subject matter jurisdiction, the Court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *SK Finance SA v. La Plata Cnty.*, 126 F.3d 1272, 1275 (10th Cir. 1997). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances."

Here, defendants present testimonial evidence that challenges plaintiffs' alleged amount in controversy. Under the Class Action Fairness Act ("CAFA"), district courts may exercise jurisdiction over any class action so long as the aggregated amount in controversy exceeds $5,000,000, the plaintiff class contains more than 100 members,

and there is minimal diversity, meaning that any member of the plaintiff class is a citizen of a different state than any defendant. 28 U.S.C. §§1332(d)(2), (5)-(6).[2] "The rule governing dismissal for want of jurisdiction in federal court is that, unless the law provides otherwise, the amount claimed by the plaintiff controls if the claim is apparently made in good faith." *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000) (citing *St. Paul Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

Defendants argue that plaintiffs' allegation that their claims in aggregate exceed $5 million is based on improper application of the six-year statute of limitations of Colo. Rev. Stat. § 13-80-103.5(1)(a), which governs "[a]ll actions to recover a liquidated debt or an unliquidated, determinable amount of money." Docket No. 50 at 5. Defendants assert that the proper statute of limitations is the three-year limitations period applied to breach of contract claims. *Id.* at 4 (citing Colo. Rev. Stat. § 13-80-101(1)(a)). Under the three-year statute of limitations, defendants state that plaintiffs' claims amount to less than $5 million. Docket No. 50 at 5; Docket No. 50-1 at 2, ¶ 4.

Plaintiffs concede that the aggregate amount in controversy alleged in the complaint is based on data from "over the last six years" and do not contest defendants' statement that the amount in controversy in this matter would be less than $5 million if the Court were to apply a three-year statute of limitations. *See generally* Docket No. 51 at 5. Likewise, defendants do not contest that, if the six-year statute of limitations is

---

[2]Defendants also argue that plaintiffs lack jurisdiction under 28 U.S.C. § 1332(a). Docket No. 50 at 3-4. Plaintiffs, however, never claimed jurisdiction on this basis. *See* Docket No. 45 at 3, ¶ 12.

applied, plaintiffs' allegations satisfy CAFA's amount in controversy requirement. *See generally* Docket No. 50 at 5. Thus, the only jurisdictional issue the Court must decide is whether this is an action to "recover a liquidated debt or an unliquidated, determinable amount of money." Colo. Rev. Stat. § 13-80-103.5(1)(a).

In *Portercare Adventist Health System v. Lego*, the Colorado Supreme Court held that a "liquidated debt" is one that "may be ascertained either by reference to the agreement, or by simple computation using extrinsic evidence if necessary." 286 P.3d 525, 528 (Colo. 2012) (citing *Rotenberg v. Richards*, 899 P.2d 365, 367 (Colo. App. 1995) ("if the amount of a claim is readily calculable or ascertainable, a debtor's dispute of or defenses against such claim, or any setoff or counterclaim interposed to such claim, does not affect the character and classification of that claim as being liquidated."). In *Portercare*, a hospital sought recovery of unpaid medical bills resulting from a three-week hospital stay. *Id.* at 527. The court found that the debt at issue was liquidated because it was subject to simple computation based on an "itemized written breakdown" of fees, each of which had a "specific pre-determined charge for the service provided." *Id.* at 529. In holding that this debt was liquidated, the Colorado Supreme Court rejected the narrow interpretation of "liquidated debt" applied previously by some appellate courts, wherein a debt would only be considered "liquidated" where a written agreement "set[] forth an amount owed or a formula for calculating an amount owed." *Id.* at 527. Instead, the *Portercare* court held that the debt was liquidated because "[b]y adding the itemized charges together, one could easily compute the total value of the medical expenses" owed. *Id.* at 529.

Plaintiffs argue that the work orders at issue in this case, like the medical bill in *Portercare*, state a precise amount that real estate professionals would be paid for performing the work requested. Docket No. 51 at 7. Plaintiffs attach two such work orders, each of which specifies the amount to be paid upon completion of the work. *See* Docket No. 51-19 at 2 ("agreed reimbursement of: $45.00"); Docket 51-20 at 3 ("agreed reimbursement of: $35.00").

Defendants argue first that *Portercare* does not apply because the Colorado Supreme Court "expressly limited its holding in *Portercare* to 'the hospital bill context.'" Docket No. 52 at 3 (quoting *Portercare*, 286 P.3d at 530). The Court disagrees. While *Portercare* concerned a hospital bill, defendants offer no plausible explanation why the phrase "liquidated debt" should have one meaning in the "hospital bill context" and a different meaning in other circumstances.

Next, defendants attempt to distinguish this case from *Portercare* because they say that the amount to be paid for appraisals fluctuated based on specific circumstances and many of the work orders are "subject to material disputes respecting timeliness, adequacy and competency and completeness." Docket No. 52 at 4. Defendants' argument is unavailing. That the amounts to be paid for each appraisal and the precise nature of the work may have fluctuated, as Mr. Poole notes in his declaration, Docket No. 50-1 at 1, would not impede the ability of plaintiffs to add up the amount to be paid on the work orders in order to reach a sum total. And defendants provide no evidence that many of the work orders are subject to "material disputes." Even if this were true, it would not affect the character of the debt as being "liquidated"

for statute of limitations purposes.  *Portercare*, 286 P.3d at 529 ("The fact that [defendant] disputed the itemized bill does not affect the character and classification of the claim as being liquidated") (quotation and alteration marks omitted).

Defendants have not raised any genuine dispute that the amount of each unpaid obligation is readily determinable.  As plaintiffs note, Mr. Poole did not claim to have any difficulty in calculating an aggregate amount owed to real estate professionals for a given period of time.  Docket No. 50-1 at 2.  The Court concludes that, like the hospital bill in *Portercare*, computation in this case simply involves "adding the itemized charges together."  *Id.* at 529.  The debt is therefore "liquidated debt," which falls under the six-year statute of limitations provided by Section 13-80-103.5(1)(a).  Thus, plaintiffs' complaint satisfies CAFA's amount in controversy requirement, and the Court has subject matter jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332(d).[3]

### B. Class Certification

As an alternative to dismissing for lack of subject matter jurisdiction, defendants argue that the Court should deny class certification.  In response, plaintiffs argue that

---

[3] Defendants also argue that claims against defendant Cartel Asset Management, LLC ("CAM") must be dismissed regardless of which limitations period applies.  Docket No. 50 at 6, n.2.  According to defendants' declarant, CAM has not hired a real estate professional to provide a broker price opinion since 2004.  Docket No. 50-1 at 2, ¶ 5. Defendants' argument, which introduces evidence outside the pleadings, has no bearing on the Court's subject matter jurisdiction.  It therefore cannot be considered unless the Court converts defendants' motion to a motion for summary judgment. *Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  Given that defendants' argument consists of two lines in a footnote, the Court declines to convert their motion into a motion for summary judgment and does not consider the argument that claims against CAM are barred by the statute of limitations.

defendants' motion is premature and can only be granted if defendants demonstrate that plaintiffs can establish no facts to support class treatment. Docket No. 51 at 8-9.

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). In the typical case where the plaintiff affirmatively applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. El Paso County*, 386 F.3d 963, 968 10th Cir. 2004)).

Here, plaintiffs have not yet moved for class certification. Instead, defendants preemptively ask the Court to deny class certification. It appears that at least some discovery has taken place in this action, *see* Docket No. 51-11 at 4, ¶ 15 (referring to a spreadsheet produced by defendants in this action and a subsequent meet and confer process), but the Court cannot determine the extent of discovery to date.

"Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny [class] certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009). Although the Tenth Circuit has not articulated a standard for evaluating preemptive motions to deny class certification, courts in this district have held motions to strike class allegations to a high standard of proof. In *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 WL 3733023 at *1 (D. Colo. Sept. 16, 2010), the court ruled that, to prevail on a motion to strike class allegations, a defendant "must demonstrate from the face of plaintiffs' complaint that it will be *impossible* to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to

prove" (quoting *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991)) (emphasis in original). Likewise, in *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD-KMT, 2013 WL 544078 at *3 (D. Colo. Sept. 27, 2013), the court opined that, in a preemptive challenge to class certification, "the Tenth Circuit would require only that the named [p]laintiffs prove that the allegations of their complaint, accepted as true, satisfy Rule 23(a)'s requirements" (citation and quotation omitted); *see also Chenensky v. N.Y. Life Ins. Co.*, 2011 WL 1795305 at *1 (S.D.N.Y. April 27, 2011) ("A motion to strike class allegations is even more disfavored [than motions to strike generally] because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification") (quoting *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) (ellipses omitted)).[4] Consistent with these opinions, the Court will only grant defendants' motion if they are able to show conclusively that plaintiffs will be unable to establish facts that would make class treatment appropriate.[5]

---

[4]In certain circumstances, motions to strike class allegations need not be held to a high standard of proof. In *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82 (D. Conn. 2014), the court distinguished between motions to strike class allegations based on the Rule 23(a) and (b) requirements from motions to strike based on "statutory restriction[s]" that foreclose class treatment that are "unrelated to the issues to be addressed at the class certification stage." *Id.* at 113. In *Trilegiant*, the defendants moved to strike class allegations on the basis that the Connecticut Unfair Trade Practices Act prohibited individuals who do not reside in Connecticut from bringing claims on behalf of a class. *Id.* Defendants bring no such statutory challenge here.

[5]Although defendants do not bring a motion to strike pursuant to Fed. R. Civ. P. 12(f), the Court sees no practical difference between defendants' motion to deny class

Defendants argue that their motion is not premature because, following the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), the Court must engage in its own "rigorous analysis" into whether plaintiffs have satisfied the class certification requirements and may therefore deny class certification at the pleadings stage. Docket No. 52 at 6. Defendants ignore that the Court in *Wal-Mart* noted that "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S.Ct. at 2551. The "rigorous analysis" required by *Wal-Mart* only further underscores that, in most circumstances, it is appropriate for courts to allow discovery before determining whether class certification is appropriate. *Accord, e.g.*, *Burton v. Dist. of Columbia*, 2011 WL 6450603 at *7 (D.D.C. Dec. 23, 2011) (noting that *Wal-Mart* "confirms that pre-certification discovery should ordinarily be available where a plaintiff has alleged a potentially viable class claim because *Wal-Mart* emphasizes that the district court's class certification determination must rest on a 'rigorous analysis' to ensure actual, not presumed, conformance with Rule 23") (quotation and citation omitted).

### 1. Rule 23(a) Requirements

Defendants argue that plaintiffs are unable to satisfy the numerosity and commonality requirements of Rule 23(a). The Court addresses each in turn.

#### a. Numerosity

Rule 23(a)(1) requires that plaintiffs seeking class certification "establish that the class is so numerous as to make joinder impracticable." *Trevizo v. Adams*, 455 F.3d

---

certification and a Rule 12(f) motion to strike class allegations.

1155,1162 (10th Cir. 2006) (quoting *Peterson v. Okla. City Housing Auth.*, 545 F.2d 1270, 1273 (10th Cir. 1976)).  In the Tenth Circuit, there is no set formula for determining whether a proposed class is large enough to meet the numerosity requirement.  *See id.*  Rather, the question of numerosity is a fact-specific inquiry within the broad discretion of the district court.  *Id.*  Additionally, the Supreme Court has held that courts "need not blindly rely on conclusory allegations which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaint."  *Wal-Mart*, 131 S.Ct. at 2551 (2011).

Defendants argue that plaintiffs have provided only "boilerplate" allegations that joinder of all potential class members is impracticable.  Docket No. 50 at 8-9.  The Court disagrees.  In their complaint, plaintiffs allege that "at least 15,600 licensed real estate professionals have not been paid in accordance with their payment terms and are therefore members of the potential Class."  Docket No. 45 at 9, ¶ 42.  Additionally, plaintiffs' opposition states that a spreadsheet produced during the course of discovery reveals that defendants are delinquent on payments to "at least 15,697" agents.  Docket No. 51-11 at 5, ¶ 17.  Plaintiffs also claim that the proposed class members are dispersed throughout the United States.  Docket No. 51 at 11.  Defendants reply that mere geographic dispersion does not render joinder impracticable.  Docket No 52 at 8.  Defendants ignore, however, that plaintiffs' class allegations are based not only on geography, but also on a claimed class consisting of more than 15,600 members.  Defendants further argue that joinder of individual plaintiffs is necessary given the "unique facts and circumstances that will govern the claims and defenses applicable to each member of the potential class."  *Id.*  While this argument may be relevant to other

11

factors in the class certification analysis, it is irrelevant to the Court's numerosity analysis.

The Court finds that defendants have not shown that plaintiffs will be unable to satisfy Rule 23(a)(1)'s numerosity requirement. Courts routinely find that numerosity is satisfied by classes much smaller than the size of the class alleged here. *See Decoteau v. Raemisch*, --- F.R.D. ----, 2014 WL 3373670 at *2 (D. Colo. July 10, 2014) (holding that a class of "at least 500" satisfied the numerosity requirement); *Belote v. Rivet Software*, No. 12-cv-02792-WYD-MJW, 2013 WL 2317243 at *2 (D. Colo. May 28, 2013) (numerosity met where "there are approximately 125 class members" and "the cost of litigation . . . is high compared to recovery").

### b. Commonality

Rule 23(a)(2) requires "only a single question of law or fact common to the entire class"; however, "[m]ere allegations of systemic violations of the law . . . will not automatically satisfy Rule 23(a)'s commonality requirement; a discrete legal or factual question common to the class must exist." *Stricklin*, 594 F.3d at 1195 (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)).

Defendants argue that plaintiffs cannot satisfy the commonality requirement because the claims of each class member will be governed by unique, specific facts, including:

- Whether the class member entered into a contract with each of the Defendants to produce broker price opinions;
- Whether any of the Defendants knowingly made false statements of fact or intended to mislead the class member at the time any such alleged contract was formed;
- Whether the class member was induced to enter into the contract with

- each of the Defendants on the basis of a false statement of fact;
- Whether the class member was qualified to provide broker price opinions;
- Whether each of the Defendants requested that the class member produce one or more broker price opinions;
- Whether the class member produced one or more broker price opinions that were satisfactory in terms of quality;
- Whether the class member produced one or more broker price opinions that were timely;
- Whether additional work was requested to be performed by the class member subsequent to his or her submission of a broker price opinion, and whether such additional work was performed;
- Whether the class member was paid (fully or partially) for the broker price opinions that he or she produced; [and]
- Whether the class member's demand for payment (or any other claim) is barred by any applicable statute of limitations.

Docket No. 50 at 9-10. Plaintiffs respond that members of the proposed class suffered the same injury due to non-payment of obligations that arose under uniform work orders, and that the case involves common questions concerning contract formation and breach. Docket No. 51 at 11-12.

The Court finds that defendants have failed to show that plaintiffs will be unable to satisfy the commonality requirement. Plaintiffs have alleged that defendants entered into uniform implied-in-fact contracts by sending work orders to proposed class members. While defendants suggest that they may have defenses against some members of the plaintiff class, defendants introduce only unsupported argument as to their possible defenses. This is not sufficient to find that plaintiffs will be unable to satisfy their burden to show a question of law or fact common to the entire class at this early stage of the litigation.

### 2. Certification Under Rule 23(b)(2)

Class certification is appropriate under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so

13

that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs state that they do not intend to seek certification under Rule 23(b)(2). Docket No. 51 at 10, n.2. As a result, the Court will not consider this basis for certification.

### 3. Rule 23(b)(3) Certification

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624. Rule 23(b)(3)'s purpose is to "ensure[] that the class will be

certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).

Defendants argue that plaintiffs will be unable to show that common issues predominate and that class treatment is superior to individual treatment, and cite to the same list of individualized inquiries they claim preclude plaintiffs from meeting the commonality standard. *Compare* Docket No. 50 at 14 *with id.* at 9-10. Plaintiffs respond that all that is required to prove plaintiffs' putative class claims is a showing of contract formation, substantial performance by the plaintiff class, failure to perform by defendants, and damages. Docket No. 51 at 13. According to plaintiffs, this information can be established entirely through evidence in defendants' records. *Id.*

The Court agrees with plaintiffs. Several of the individualized inquiries that defendants claim defeat the predominance requirement are wholly irrelevant to plaintiffs' claims, including whether defendants made false statements and induced class members to enter into contracts. *See* Docket No. 50 at 14. As to the remainder of defendants' allegations, defendants offer no rebuttal of plaintiffs' claims that the issues of contract formation, plaintiff class members' performance, and defendants' breach can be resolved by reference to materials in defendants' possession. Indeed, it appears from defendants' argument regarding subject matter jurisdiction that defendants possess records that show with a high degree of precision the amounts owed to members of the putative class over specific periods of time. *See* Docket No.

50-1 at 2, ¶ 4 (noting that defendants' declarant "reviewed the amounts owed to third-party real estate professionals for the three-year period of time beginning on December 2, 2010"). Defendants' assertion that individual issues predominate, which consists of unsupported argument, is not sufficient to show that plaintiffs will be unable to meet Rule 23(b)(3)'s predominance requirement in light of the evidence introduced by plaintiffs of the uniformity of the work orders and defendants' records of unpaid accounts.

The Court also finds that defendants have not shown that plaintiffs will be unable to establish that class resolution is superior to other methods of resolving this dispute. Defendants introduce no evidence that any other litigation concerning this dispute is pending and do not otherwise argue that individual class members' interests in prosecuting their own actions weigh against class treatment. Instead, defendants simply argue, again, that individual issues predominate. The Court finds that defendants have not shown that plaintiffs will be unable to certify a class based on the factors set forth in Rule 23(b)(3)(A)-(D). Plaintiffs assert that individual claims in this case range from "a few hundred or, at most, a few thousand dollars." Docket No. 51 at 14. As the Supreme Court has recognized, the primary concern of the Advisory Committee in developing Rule 23(b)(3) was "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Plaintiffs claim that thousands of real estate professionals nationwide are each owed a small sum due to defendants' violation of a form agreement, where only small details varied from order to order. If, after adequate discovery, plaintiffs are able to corroborate both the uniformity of the work orders and

the relatively small individual recoveries at issue, this would seem to be an example of the type of case appropriate for class resolution under Rule 23(b)(3).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants Brokerpriceopinion.com, Inc., First Valuation, LLC, First Valuation Services, LLC, First Valuation Technology, LLC, and Cartel Asset Management, LLC's Motion to Dismiss Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction or, Alternatively, to Deny Class Certification [Docket No. 50] is **DENIED**.

DATED March 23, 2015.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge