IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-03258-PAB-KMT

KATHY WORNICKI; and
EDWARD LAINE, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

vs.

BROKERPRICEOPINION.COM, INC.;
WALTER COATS;
FIRST VALUATION, LLC;
FIRST VALUATION SERVICES, LLC;
FIRST VALUATION TECHNOLOGY, LLC;
VALUTECH, INC.; and
CARTEL ASSET MANAGEMENT, LLC.

                    Defendants.

---

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

---

# TABLE OF CONTENTS

**Page No.**

I.    D.C.COLO.LCIVR. 7.1(A) CERTIFICATION ............................................................ 1

II.   INTRODUCTION ............................................................................................. 1

III.  STATEMENT OF FACTS ................................................................................... 2

    A.   Background and procedural history ..................................................... 2

    B.   Discovery, mediation, and settlement negotiations ............................. 4

    C.   The proposed settlement ..................................................................... 5

        1.   The Settlement Class................................................................... 5

        2.   Monetary relief............................................................................ 5

            a.   Payments to Settlement Class Members ....................... 6

            b.   Attorneys' fees and litigation expenses ........................ 6

            c.   Administration costs ..................................................... 7

            d.   Class Representative Service Awards............................ 7

            e.   Schedule and procedure for disbursing monetary relief ............... 7

        3.   Injunctive relief...................................................................... 10

        4.   Notice Plan.............................................................................. 11

IV.   AUTHORITY AND ARGUMENT........................................................................ 12

    A.   The proposed settlement warrants preliminary approval.................... 12

        1.   The settlement is the product of serious and informed arm's-length negotiations between the parties........................ 13

        2.   The settlement has no obvious deficiencies............................ 14

3.      The Settlement Agreement does not improperly grant
        preferential treatment to the Class Representatives or any
        segments of the Settlement Class............................................................ 16

B.      The proposed notice program is constitutionally sound ..................................... 17

C.      A Settlement Class should be certified for settlement purposes......................... 19

D.      Scheduling a final approval hearing is appropriate............................................. 21

V.      CONCLUSION............................................................................................................ 22

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Am. Home Assurance Co. v. Cessna Aircraft Co.*,
  551 F.2d 804 (10th Cir. 1977) ........................................................................ 12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................. 20, 21

*Belote v. Rivet Software, Inc.*,
  No. 12-cv-02792-WYD-MJW, 2013 WL 2317243 (D. Colo. May 28, 2013) .............. 19

*Big O Tires, Inc. v. Bigfoot 4x4, Inc.*,
  167 F. Supp. 2d 1216 (D. Colo. 2001) ........................................................... 12

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ......................................................................... 20

*Decoteau v. Raemisch*,
  304 F.R.D. 683 (D. Colo. 2014) .................................................................. 19

*Demitropoulos v. Bank One Milwaukee, Nat'l Assoc.*,
  915 F. Supp. 1399 (N.D. Ill. 1996) .............................................................. 20

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ........................................................................ 12

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................................... 18

*Fager v. CenturyLink Commc'ns, LLC*,
  --- F.3d ---, 2016 WL 8077930 (10th Cir. Aug. 29, 2016) ............................... 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................... 15

*Hanon v. Dataprods. Corp.*,
  976 F.2d 497 (9th Cir. 1992) ....................................................................... 20

*In re Chase Bank USA, Nat'l Assoc. Check Loan Contract Litig.*,
  274 F.R.D. 286 (N.D. Cal. 2011) ................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2001) ........................................................................ 15

*In re Motor Fuel Temperature Sales Prac. Litig.*,
    258 F.R.D. 671 (D. Kan. 2009) ...................................................................... 16

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 15

*In re Qwest Commc'ns Intern., Inc. Sec. Litig.*,
    625 F. Supp. 2d 1133 (D. Colo. 2009) .......................................................... 13

*Lucken Family Ltd. P'ship, LLP v. Ultra Resources*,
    No. 09-cv-01543-REB-KMT, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) ................ 17

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) .................................................................... 12

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)........................................................................... 20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950).............................................................................. 17, 18

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir.1982) ......................................................................... 15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...................................................................................... 18

*Rhodes v. Olson Assocs., P.C.*,
    308 F.R.D. 664 (D. Colo. 2015) .................................................................... 13

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) .................................................................... 20

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2010) ...................................................................... 18

*Tuten v. United Airlines, Inc.*,
    41 F. Supp. 3d 1003 (D. Colo. 2014)............................................................ 12

## FEDERAL RULES

Fed. R. Civ. P. 23(a) ........................................................................................................... 19

Fed. R. Civ. P. 23(a)(1).......................................................................................................... 19

Fed. R. Civ. P. 23(a)(2).......................................................................................................... 20

Fed. R. Civ. P. 23(a)(3).......................................................................................................... 20

Fed. R. Civ. P. 23(a)(4).......................................................................................................... 20

Fed. R. Civ. P. 23(b)(3).......................................................................................................... 19

Fed. R. Civ. P. 23(e) ............................................................................................................. 21

Fed. R. Civ. P. 23(e)(1).......................................................................................................... 17

## OTHER AUTHORITIES

Manual for Complex Litig. (Fourth) § 13.14 (4th ed. 2004) ............................................... 12, 13

Plaintiffs Kathy Wornicki and Edward Laine respectfully submit this memorandum in support of their unopposed motion for preliminary approval of the class action settlement reached in this lawsuit.

## I. D.C.COLO.LCIVR. 7.1(A) CERTIFICATION

The undersigned certifies that prior to filing this Motion, Jennifer Murray, counsel for Plaintiffs, conferred with Joseph T. Bernstein, counsel for Defendants on March 10, 2017.   Mr. Bernstein stated Defendants do not oppose this Motion.

## II. INTRODUCTION

Plaintiffs Kathy Wornicki and Edward Laine have reached a settlement with Defendants Brokerpriceopinion.com, Inc., Walter Coats, First Valuation, LLC, First Valuation Services, LLC, First Valuation Technology, LLC, ValuTech, Inc., and Cartel Asset Management, LLC ("Defendants" or "Brokerprice") in this class action lawsuit alleging breach of contract, unjust enrichment, and fraudulent inducement.   The settlement requires Defendants to pay $1,567,000, which covers (1) $1,020,000 to the class to be distributed pro rata amongst class members who submit valid claims, (2) $500,000 in requested attorneys' fees and costs as approved by the Court, (3) $5,000 in requested service awards for the class representatives ($10,000 total) as approved by the Court, and (4) the costs of notice and administering the settlement, estimated to be approximately $41,676.[1]   If the Court approves these requests, these amounts will be paid in installments over forty-seven months.

---

[1]JND Legal Administration initially estimated notice and administration costs of $37,000. Declaration of Jennifer Rust Murray ("Murray Decl.") ¶ 10.  The Settlement Agreement refers to this estimate.  *Id.*  JND has since revised its estimate to $41,676.  *Id.*  For purposes of this motion, all references to notice and administration expenses are to the revised estimate.

The proposed settlement also provides meaningful injunctive relief. Going forward, Brokerprice must pay all brokers for every broker price opinion they complete within ninety days. If Brokerprice misses a payment and does not cure within thirty days, the settlement and class release are null and void. The settlement provides specific mechanisms to ensure timely payments are made: Defendants must prepare a standard form purchase agreement with uniform payment terms for all BPOs completed and delivered to Brokerprice; Defendants must train their employees to make full and timely payments within ninety days; Defendants must not use calling scripts, standardized emails or other communications in an attempt to delay payment; and Defendants must maintain a $240,000 cash reserve to ensure brokers receive timely payments.

The proposed settlement is a favorable result for the class, is fair, reasonable, and adequate under the standards in this Circuit, and warrants approval by the Court. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed settlement class; (3) appoint as settlement class counsel the law firms Terrell Marshall Law Group PLLC, Berens Law LLC, and the Law Offices of Stefan Coleman LLC; (4) appoint Kathy Wornicki and Edward Laine settlement class representatives; (5) approve the proposed notice plan; (6) appoint JND Legal Administration to serve as settlement administrator; and (7) schedule the final fairness hearing and related dates.

### III.  STATEMENT OF FACTS

**A.     Background and procedural history.**

This case arises from allegations that Brokerprice fails to pay brokers, including the named Plaintiffs, for amounts earned pursuant to largely uniform contracts. Plaintiffs allege brokers sign up online to provide broker price opinions for Defendants using a uniform process.

Plaintiffs allege Brokerprice sends brokers offers in the form of work order emails.  Brokers accept these offers by performing real estate valuation services at Defendants' behest. Brokerprice's accounting databases show that Plaintiffs and proposed class members performed under the terms of their contract.  These databases also show that Defendants breached the contracts by failing to pay class members.

Plaintiffs filed their Class Action Complaint on December 2, 2013, alleging claims for breach of contract and unjust enrichment.  Docket No. 1.  Defendants moved to dismiss asserting the Court lacked subject matter jurisdiction due to insufficient amount in controversy.  Docket No. 25.  Plaintiffs filed an Amended Complaint that Defendants also moved to dismiss.  *See* Docket Nos. 23, 25.  Plaintiffs then filed a Second Amended Complaint and again Defendants moved to dismiss.  Docket Nos. 45, 47.  On March 3, 2015, the Court denied Defendants' motion to dismiss.  Docket No. 58.

On October 15, 2015, Plaintiffs filed a motion for class certification, seeking certification of their breach of contract and unjust enrichment claims.  Docket No. 79.  Concurrently, Plaintiffs moved for leave to amend their Second Amended Complaint to add Brokerprice CEO Walter Coats as a defendant and claims for negligent misrepresentation and fraudulent inducement, which the Court granted.  *See* Docket Nos. 82, 97.  The Court ordered the parties to submit supplemental briefing regarding whether the negligent misrepresentation and fraudulent inducement claims should be certified, which they did.  Docket Nos. 119, 120, 122.  On September 20, 2016, the Court granted Plaintiffs' motion for class certification in part, certifying their breach of contract, unjust enrichment, and fraudulent inducement claims.  Docket No. 133.

At all times, Defendants have denied all allegations of wrongdoing and liability and deny that Plaintiffs' claims are appropriate for class treatment at trial.

**B.      Discovery, mediation, and settlement negotiations.**

The parties have actively conducted discovery regarding the merits of Plaintiffs' claims. Murray Decl. ¶¶ 16–17.  Plaintiffs propounded written discovery requests targeting Defendants' policies and invoicing practices as well as the accounts receivable and billing data necessary to prove their damages.  *Id.*  Defendants produced tens of thousands of pages of documents and data from their Quickbooks accounting system and their operational database called Final Tracks. *Id.*

Plaintiffs took four depositions of Brokerprice executives and employees, including CEO and founder Walter Coats, Controller Michael Poole, Director of Operations Brandy May, and the Vice President of Technology, Bill Mahoney.  Murray Decl. ¶ 17.  During these depositions, Defendants told Plaintiffs that Defendants operate with a substantial budget deficit that prevents them from paying their brokers on time, if at all.  *Id.*  Following the depositions, Plaintiffs aggressively pursued discovery regarding Defendants' financial circumstances, propounding additional written discovery requests and taking several more depositions designed to uncover information not only about the corporate Defendants' finances, but also Mr. Coats' personal assets.  *Id.*

By the time the parties commenced settlement negotiations, they understood the strength and weaknesses of their claims and defenses and the extent of class wide damages.  Murray Decl. ¶ 19.  The parties held a settlement conference with Magistrate Judge Boyd N. Boland (Ret.) of Judicial Arbiter Group, Inc. on December 6, 2016.  *Id.* ¶ 20.  During the settlement conference,

Defendants continued to insist that they did not have the funds to pay a large settlement. *Id*.

And Plaintiffs continued to insist that Defendants produce complete financial information that

would allow Plaintiffs to assess the extent of Defendants' purported financial dire straits. *Id*.

The case did not settle that day. *Id*. Afterwards, however, Defendants produced additional

financial information that convinced Plaintiffs and their counsel that a settlement was in the best

interest of the class. *Id*. The parties spent the next several weeks negotiating the material terms

of a class-wide settlement. *Id*. ¶ 20.

### C.    The proposed settlement.

The proposed Settlement Agreement is attached to the Declaration of Jennifer Rust

Murray as Exhibit 1 ("Settlement Agreement").

#### 1.    The Settlement Class.

The proposed "Settlement Class" is comprised of approximately 22,175 persons who on

or after December 7, 2007 entered into agreements with Defendants to prepare broker price

opinions and were not paid all monies owed to them under these agreements.

#### 2.    Monetary relief.

The Settlement Agreement requires Defendants to pay a total of $1,567,000 over a period

of 47 months. Settlement Agreement ¶¶ 37, 41. The payments will cover all of the following as

approved by the Court: (1) payments to Settlement Class Members in the amount of $1,020,000

to be distributed on a pro rata basis among Settlement Class Members who timely file valid

claims; (2) payments to Class Counsel of up to $500,000 for attorneys' fees and costs; (3) costs

of administration estimated to be approximately $41,676; and (4) service awards of $5,000 to

each of the two Class Representatives. Settlement Agreement ¶ 37.

a.    *Payments to Settlement Class Members.*

Each Settlement Class Member who submits a claim form will receive a proportionate share of the $1,020,000 that Brokerprice has agreed to pay to brokers for past amounts due. Settlement Agreement ¶ 41(a).  The determination of each Settlement Class Member's share will be based on information from Defendants' business records that reflects the total amount Defendants owe each Settlement Class Member as of the date of preliminary approval.  *Id.*  Each Settlement Class Member's share will depend on the number of Settlement Class Members who submit claims and will be calculated according to the following formula:

> $1,020,000 **divided by** the total amount Defendants owe all brokers as set forth in Defendants' business records **times** the amount owed to the individual Settlement Class member.

For example, assume Defendants owe all claimants $5,000,000 and owe Settlement Class Member "Mary" $5,000.  Settlement Class Member Mary's pro rata share of the Class Payment would be $1,020,000/$5,000,000 x $5,000 = $1,020.  *Id.*

b.    *Attorneys' fees and litigation expenses.*

The Settlement Agreement provides that Plaintiffs' counsel may request that the Court approve an award of attorneys' fees and litigation expenses in the amount of $500,000. Settlement Agreement ¶ 37(c).  Plaintiffs' counsel will file a fee petition with the Court requesting that it approve their requested fees and costs, which will compensate them for the work already performed in the case and the risk they undertook taking this action on a contingent basis.  *See Id.* ¶ 52.  The Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded.  Counsel will file the fee petition thirty days before the objection deadline so that Settlement Class members will have a chance to review it.  *Id.*

c.      *Administration costs.*

The parties have retained JND Legal Administration to administer the settlement and process claims.  Settlement Agreement ¶ 29.  JND will be responsible for preparing and sending notice via email and U.S. mail, fielding questions from Settlement Class members regarding the settlement, establishing and maintaining a settlement website, processing claims, serving CAFA notice, maintaining an escrow account into which Defendants' payments will be deposited, and disbursing funds according to the terms of the Agreement.  Settlement Agreement ¶¶ 37(e), 42.

d.      *Class Representative Service Awards.*

The Settlement Agreement provides that the Class Representatives may request that the Court approve service awards to them in the amount of $5,000 each.  Settlement Agreement ¶ 37(b).  The Class Representatives assisted with the drafting of the complaint, responded to written discovery, gathered and produced documents, and were ready and willing to sit for depositions and testify at trial.  Murray Decl. ¶ 22.  The service awards the Class Representatives seek compensate them for their time and effort and for the risks they undertook in prosecuting the case.

e.      *Schedule and procedure for disbursing monetary relief.*

The parties have agreed that Defendants may pay the total $1,567,000 in installments over the course of forty-seven months according to the following schedule.

| | |
|---|---|
| $10,000 | Within ten days following entry of preliminary approval order |
| $135,000 | Within five days following the Effective Date |
| $30,000 | Within thirty days following the Effective Date |
| $30,000 | Every thirty days for a period of forty-five months thereafter and |

$46,676          In the forty-sixth month

Settlement Agreement ¶ 37(e); Murray Decl. ¶ 10–11.

The Settlement Agreement provides that the Settlement Administrator will deposit each installment payment into an escrow account from which the funds will be distributed. Settlement Agreement ¶ 37(f). The first distribution will occur within 40 days following the Effective Date. *Id.* ¶ 41(c)(i). As of this date, Defendants will have paid $165,000 to the Settlement Administrator pursuant to paragraph 24(e)(i) – (ii), above. *Id.* After deducting $31,676 in notice and settlement administration expenses, $133,324 will remain to distribute. *Id.*; *see also* Murray Decl. ¶ 10–12. At this time, Class Counsel will be paid $100,000, which amounts to 20% of their requested $500,000 fee and cost award. *Id.* At this time, the Class Representatives each will be paid $1,000 ($2,000 total), which amounts to 20% of their requested $5,000 service awards. *Id.* Settlement Class Members who submit valid claims will receive a pro rata share of the remaining $31,324, which amounts to 3% of the total payment to the class. *Id.* For example, Settlement Class Member Mary would receive approximately $31.30 (3% of her $1,020 settlement award). *Id.*

The Settlement Agreement provides that the second distribution will occur one year following the first distribution. Settlement Agreement ¶ 41(c)(ii). By then, Defendants will have paid an additional $360,000 ($30,000 x 12) to the Settlement Administrator. *Id.* At this time, Class Counsel will be paid $100,000, which amounts to 20% of their requested $500,000 fee and cost award. *Id.* At this time, the Class Representatives each will be paid $1,000 ($2,000 total), which amounts to 20% of their requested $5,000 service awards. *Id.* Settlement Class Members who submit valid claims will receive a pro rata share of the remaining $258,000, which amounts

to approximately 25.3% of the total class payment. *Id.* For example Settlement Class Member Mary would receive approximately $258 (25.3% of her $1,020 settlement award). *Id.*

The Settlement Agreement provides that the third distribution will occur one year after the second distribution. Settlement Agreement ¶ 41(c)(iii). By then, Defendants will have paid an additional $360,000 ($30,000 x 12) to the Settlement Administrator. *Id.* At this time, Class Counsel will be paid $100,000, which amounts to 20% of their requested $500,000 fee and cost award. *Id.* At this time, the Class Representatives each will be paid $1,000 ($2,000 total), which amounts to 20% of their requested $5,000 service awards. *Id.* Settlement Class Members who submit claims will receive a pro rata share of the remaining $258,000, which amounts to 25.3% of the total class payment. *Id.*

The Settlement Agreement provides that the fourth distribution will occur one year after the third distribution. Settlement Agreement ¶ 41(c)(iv). By then, Defendants will have paid an additional $360,000 ($30,000 x 12) to the Settlement Administrator. *Id.* At this time, Class Counsel will be paid $100,000, which amounts to 20% of their requested $500,000 fee and cost award. *Id.* At this time, the Class Representatives each will be paid $1,000 ($2,000 total), which amounts to 20% of their requested $5,000 service awards. *Id.* Settlement Class Members who submit claims will receive a pro rata share of the remaining $258,000, which amounts to 25.3% of the total class payment. *Id.*

The Settlement Agreement provides that the fifth distribution will occur ten months following the fourth distribution. Settlement Agreement ¶ 41(c)(v). By then, Defendants will have paid an additional $316,676 ($30,000 x 9 months plus $46,676 in the tenth month) to the Settlement Administrator. *Id.*; *see also* Murray Decl. ¶ 10–12. At this time, Class Counsel will

be paid $100,000, which amounts to approximately 20% of their requested $500,000 fee and cost award.  *Id.*  At this time, the Class Representatives each will be paid $1,000 ($2,000 total), which amounts to 20% of their requested $5,000 service awards.  *Id.*  Settlement Class Members who submit claims will receive a pro rata share of the remaining $214,676, which amounts to 21% of the total Class Payment.  *Id.*  For example Settlement Class Member Mary above would receive approximately $214.68 (21% of her $1,020 settlement award).

       3.     <u>Injunctive relief.</u>

       In addition to monetary relief, the Settlement Agreement provides meaningful prospective relief that ensures Defendants pay brokers within ninety days for all broker price opinions that brokers complete.  Settlement Agreement ¶ 40.  If Brokerprice misses a payment and does not cure within thirty days, the settlement and class release are null and void.  *Id.* ¶ 38. The settlement provides specific mechanisms to ensure timely payments are made: Defendants must prepare a standard form purchase agreement with uniform payment terms for all BPOs completed and delivered to Brokerprice; Defendants must train their employees to make full and timely payments within ninety days; Defendants must not use calling scripts, standardized emails or other communications in an attempt to delay payment; and Defendants must maintain a $240,000 cash reserve to ensure brokers receive timely payments.  *Id.* 40.

       To ensure Defendants have complied with the Settlement Agreement's provisions and continue to comply, the settlement provides that bi-annually Defendants must submit a report to Class Counsel, describing their compliance with the settlement terms.  Settlement Agreement ¶ 40.  They also must report whether they have been sued in an individual or class action lawsuit. *Id.*

4.      Notice Plan.

In conjunction with preliminary approval, Plaintiffs respectfully ask the Court to approve a notice program, which JND Legal Administration will administer by (1) sending an email summarizing the Settlement Agreement to every Settlement Class member for whom an email is available in Defendants' records; (2) sending a postcard summarizing the settlement to Settlement Class members for whom an email is not available or for any Settlement Class member whose email is returned undeliverable; (4) updating any mailing addresses through the National Change of Address Database and performing one skip trace if a postcard is returned without a forwarding address; (5) setting up and maintaining the Settlement Website; (6) preparing and serving CAFA notice; (7) approving claims and tracking individuals who have opted out; (8) establishing and maintaining an escrow account into which Defendants' installment payments will be deposited; and (9) calculating and distributing payments to eligible Settlement Class members, Class Counsel, and the Class Representatives.  Settlement Agreement ¶¶ 37, 41–44, 47–49.

Settlement Class members will have sixty days from the date the postcard and claim form are mailed to submit a written request to be excluded from the Settlement Class.  Settlement Agreement ¶¶ 25, 43.  Settlement Class members also will have sixty days from the initial mailing to object to the settlement.  *Id*. ¶¶ 24, 45.  Class Counsel will post their fee petition on the Settlement Website at least thirty days before the deadline to object.  *Id*. ¶ 42(c).

The email and postcard that JND Legal Administration will mail to Settlement Class members, which is written in plain English, summarize the settlement and clearly set forth the deadline to submit a claim, request exclusion, or object to the settlement.  Settlement Agreement,

Exs. A–B; Murray Decl., Exs. 2–3.  The email and postcard include the amount of Class

Counsel's requested fee and explain how individual awards will be calculated.  *Id.*  The email

and postcard direct Settlement Class members to a settlement website for further information.  At

the settlement website, copies of the Settlement Agreement, preliminary approval order, and

operative complaint will be available for viewing and downloading, and the website will include

frequently asked questions.  Settlement Agreement ¶¶ 35, 42(c).

## IV.  AUTHORITY AND ARGUMENT

### A.  The proposed settlement warrants preliminary approval.

"The inveterate policy of the law is to encourage, promote, and sustain the compromise

and settlement of disputed claims."  *Am. Home Assurance Co. v. Cessna Aircraft Co.*, 551 F.2d

804, 808 (10th Cir. 1977) (quotation and internal marks omitted); *Big O Tires, Inc. v. Bigfoot

4x4, Inc.*, 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("As a matter of public policy, the law

favors and encourages settlements.").  This is especially true in class actions like this, "where

substantial judicial resources can be conserved by avoiding formal litigation."  *Tuten v. United

Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (quoting *Ehrheart v. Verizon Wireless*,

609 F.3d 590, 594–95 (3d Cir. 2010)); *Big O Tires*, 167 F. Supp. 2d at 1229 ("Particularly in

complex cases the litigants should be encouraged to determine their respective rights between

themselves.").

Approval of a class action settlement is a two-stage process.  The purpose of the first

stage, i.e., preliminary approval, "is to determine whether there is any reason not to notify the

class members of the proposed settlement and to proceed with a fairness hearing."  *Lucas v.

Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *see also* Manual for Complex Litig. (Fourth)

§ 13.14, at 173 (4th ed. 2004).  Preliminary approval is merited when "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015).  The proposed settlement satisfies this test.

    1.    <u>The settlement is the product of serious and informed arm's-length negotiations between the parties.</u>

Settlement approval is appropriate where "there is no indication that any of the negotiating parties unfairly was pressured or coerced into agreeing to the settlement."  *In re Qwest Commc'ns Intern., Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2009).  The settlement was reached after the parties engaged in years of litigation, extensive discovery, and months of informed, arm's-length negotiations.  Murray Decl. ¶ 16–18.  The parties commenced informal settlement discussions after the parties had fully briefed several motions to dismiss, conducted written discovery, taken multiple depositions, and the Court had entered its Order granting, in part, Plaintiffs' motion for class certification.  *Id.* ¶ 19–20.  After Defendants made Plaintiffs a written settlement offer, the parties set a settlement conference with Judge Boland, a highly respected mediator who has substantial experience settling large, complex cases.  With Judge Boland's assistance, the parties participated in a formal settlement conference.  *Id.* ¶ 20.

The primary issue discussed during the settlement conference was the amount of money that Defendants could put toward a settlement.  Murray Decl. ¶ 20.  Defendants asserted that they could not pay a large, lump sum settlement, suggesting that such an outcome would put them out of business.  *Id.*  Plaintiffs did not take Defendants' assertions regarding their purportedly precarious financial situation at face value.  *Id.*  Although Defendants already had produced

substantial financial information, including profit and loss statements and tax returns, Plaintiffs insisted that Defendants provide even more information documenting their lack of funds. *Id.* As a result, the case did not settle that day. *Id.*

Over the course of the next two months, Defendants produced additional tax returns and bank statements. Murray Decl. ¶ 20. Plaintiffs' counsel scrutinized this information and agreed to re-open settlement negotiations only after they were convinced that Defendants would not be able to pay a judgment and that settling was in the best interest of the class. *Id.* Still, it took several weeks and the exchange of several drafts of a settlement term sheet for the parties to reach agreement. *Id.* ¶ 21. Such extensive negotiations and the efforts of Plaintiffs and their knowledgeable and experienced counsel support settlement approval. *Fager v. CenturyLink Commc'ns, LLC*, --- F.3d ---, 2016 WL 8077930, at *6 (10th Cir. Aug. 29, 2016) (no reason to disturb settlement where there is no evidence of conclusion and the evidence supports the inference that the parties extensively negotiated the settlement at arm's length).

        2.      The settlement has no obvious deficiencies.

Nothing in the course of the settlement negotiations or the terms of the settlement raises any obvious doubt as to its fairness. To the contrary, the settlement ensures that, despite Defendants' financial problems, brokers will receive compensation for the broker price opinions that they completed on Defendants' behalf and will complete in the future. The Settlement Agreement requires Defendants to sign a promissory note and to grant Plaintiffs, Settlement Class Members, and Class Counsel a security interest in all their tangible and intangible personal property in the event they default on their settlement obligations. Settlement Agreement ¶ 38(a), Ex. F. The Settlement Agreement further provides that any release will be void if the Defendants

default and fail to cure.  *Id.* ¶ 38(b).  These measures ensure that Settlement Class members will have a right to sue Defendants in the event of default and is a vast improvement over Plaintiffs and Settlement Class members' current situation in which Defendants fail to timely pay brokers in accordance with the terms of their agreements or at all.

Plaintiffs acknowledge that, depending upon the number of Settlement Class Members that file claims, the $1,020,000 payment to the Settlement Class may not provide sufficient funds to compensate the Settlement Class Members for the entirety of the amounts they allege are due and owing, which according to Defendants' records amounts to between $8 million and $9 million.  But "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2001) (quoting *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir.1982)) (approving a settlement estimated to be worth 16–50% of the plaintiffs' estimated loss); *In re Omnivision Tech., Inc*., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement amounting to nine percent of estimated total damages); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  This is especially true where, due to Defendants' financial situation, Plaintiffs and Settlement Class Members very likely would recover nothing if they proceed to trial.

Furthermore, Plaintiffs and the Settlement Class faced substantial risk that they would lose on the merits.  Throughout this case, Defendants have maintained that they plan to pay brokers for all broker price opinions completed.  They simply delay payment due to cash flow

- 15 -

reasons.  If Defendants convinced the Court that they did not breach any contract by simply

delaying payment, Plaintiffs and Class members would recover nothing.  Moreover, had the

parties not settled, Plaintiffs faced conducting expensive expert work in order to prove their

damages at trial.  Thus, the settlement is a good result for the class.  *See generally In re Motor*

*Fuel Temperature Sales Prac. Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009) (granting preliminary

approval because, among other things, "[t]he costs of continued litigation are high, and it is

possible that plaintiffs could receive little or no pecuniary relief").

      The payment plan proposed in the Settlement Agreement is fair.  Defendants have

indicated that they are able to pay $30,000 a month toward a settlement.  Murray Decl. ¶ 21.

During settlement negotiations, Plaintiffs insisted that Defendants pay at least six figures "up

front."  *Id.*  Defendants ultimately agreed to pay $135,000 as of the Effective Date and an

additional $30,000 one month later.  Defendants will pay $30,000 a month for the next 45

months.  Defendants will then pay $46,676, which will be the final payment under the

settlement.  *Id.* ¶ 11.  Defendants will make the installment payments to the Settlement

Administrator, which will distribute them approximately once a year for four years.  The

installment plan provides a way for Defendants to satisfy their obligations to Settlement Class

Members and at the same time remain in business.

      3.    <u>The Settlement Agreement does not improperly grant preferential treatment to the Class Representatives or any segments of the Settlement Class.</u>

      The Settlement Agreement treats all Settlement Class members equally.  All Settlement

Class Members will have the opportunity to submit a claim for a cash award.  All Settlement

Class Members who submit a claim will receive a pro rata share of the settlement.  Each

Settlement Class Member's pro rata share shall be based on the total amount Defendants owe the

Settlement Class Member as set forth in Defendants' business records.  All Settlement Class Members who continue to perform services for Defendants benefit from the prospective relief the settlement provides.

Like the other Settlement Class Members, the Class Representatives will receive a pro rata share of the settlement based on the amount Defendants owe them.  Each Class Representative also will request a $5,000 service award, which courts commonly approve because they "are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class."  *Lucken Family Ltd. P'ship, LLP v. Ultra Resources*, No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (citing cases).  With their fee petition, Plaintiffs will provide the Court with further briefing and authority supporting their request for service awards.

In sum, all potential risks were considered in determining that the settlement is in the best interests of the Settlement Class and the Settlement Agreement is well within the range of reasonableness for preliminary approval.  Plaintiffs respectfully ask the Court to permit them to send notice of the settlement to the Settlement Class and schedule the final fairness hearing.

**B.**      **The proposed notice program is constitutionally sound.**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The question is not whether actual notice was provided to all interested parties, but rather whether the

notice is the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)) (quoting *Eisen*, 417 U.S. at 173).

The proposed forms of notice attached as Exhibits A–C to the Settlement Agreement do just that. The notices are clear, straightforward, and provide persons in the Settlement Class with enough information to evaluate whether to participate in the settlement. Thus, the notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

The Settlement Agreement provides for direct notice via email to members of the Settlement Class for whom email addresses are available in Defendants' records. If an email address is not available or if an email bounces back, the Settlement Class member will be sent a postcard by U.S. Mail. This notice program satisfies due process especially because Rule 23 does not require that each potential class member receive actual notice of the class action. *Mullane*, 339 U.S. at 316 (explaining that the Supreme Court "has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning"). All in all, the notice program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23

C.      **A Settlement Class should be certified for settlement purposes.**

This Court already has certified a Class defined as: "All persons or entities who provided broker price opinions on behalf of Brokerpriceopinion.com, Inc., First Valuation, LLC, First Valuation Services, LLC, First Valuation Technology, LLC, Cartel Asset Management, LLC, Walter Coats, or ValuTech between December 2, 2007 and the date of final disposition of this action and have not been paid for their services in accordance with Defendants' terms of payment."  Docket No. 133 at 30.

Plaintiffs respectfully request that this Court provisionally certify a Settlement Class for settlement purposes defined as: All persons preparing broker price opinions (BPOs), who on or after December 7, 2007 entered into agreements with Defendants for BPOs and who were not paid all monies owed them by Defendants under such agreements who do not request to be excluded from the Settlement.  Such certification will allow the Settlement Class to receive notice of the settlement and its terms, including the right to submit a claim and recover money if the settlement is approved, the right to be heard on the settlement's fairness, the right to opt out of the settlement, and the date, time and place of the formal settlement hearing.

Certification of the Settlement Class for settlement purposes is appropriate under Rule 23(a) and (b)(3), largely for the same reasons that certification was found appropriate for litigation purposes.  The numerosity requirement of Rule 23(a) is satisfied because the Class consists of approximately 22,175 persons spread throughout the country.  *See* Fed. R. Civ. P. 23(a)(1); *see also Decoteau v. Raemisch*, 304 F.R.D. 683, 687 (D. Colo. 2014) (holding that a class of "at least 500" satisfied the numerosity requirement); *Belote v. Rivet Software, Inc.*, No. 12-cv-02792-WYD-MJW, 2013 WL 2317243, at *2 (D. Colo. May 28, 2013) (numerosity met

where "there are approximately 125 class members" and "the cost of litigation … is high compared to recovery").  The commonality requirement is satisfied because this case involves allegations of failure to pay brokers in accordance with largely uniform contracts, which give rise to numerous common issues.  *See* Fed. R. Civ. P. 23(a)(2); *see also Demitropoulos v. Bank One Milwaukee, Nat'l Assoc.*, 915 F. Supp. 1399, 1417, n. 19 (N.D. Ill. 1996) ("The fact that this case involves a standard form lease also leads this Court to conclude that Rule 23(a)(2)'s commonality requirement is met"); *In re Chase Bank USA, Nat'l Assoc. Check Loan Contract Litig.*, 274 F.R.D. 286, 291 (N.D. Cal. 2011) (finding commonality satisfied where various form letters set forth "the same basic terms").  The typicality requirement is satisfied because Plaintiffs' claims arise out of the same course of conduct, are based on the same legal theory, and resulted in the same injury as the claims.  *See* Fed. R. Civ. P. 23(a)(3); *see also Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The adequacy of representation requirement is satisfied because Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Class.  *See* Fed. R. Civ. P. 23(a)(4); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626, n. 20 (1997); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).  Plaintiffs' counsel, who are experienced class action litigators, have and will continue to vigorously represent the Settlement Class.  *Id.* at 1188; see also Murray Decl. ¶¶ 2–9.

The predominance requirement of Rule 23(b)(3) is satisfied because common questions present a significant aspect of the case and can be resolved for all Class members in a single adjudication.  *See* Fed. R. Civ. P. 23(b)(3); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Because the claims are being certified

for purposes of settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620

("Confronted with a request for settlement-only certification, a district court need not inquire

whether the case, if tried, would present intractable management problems … for the proposal is

that there be no trial."). Certification of the Class for purposes of settlement is appropriate.

 **D.     Scheduling a final approval hearing is appropriate.**

       The last step in the settlement approval process is a final approval hearing at which the

Court may hear all evidence and argument necessary to make its settlement evaluation.

Proponents of the settlement may explain the terms and conditions of the Settlement Agreement,

and offer argument in support of final approval.   The Court will determine after the final

approval hearing whether the settlement should be approved, and whether to enter a final order

and judgment under Rule 23(e).

       Plaintiffs request that the Court set a date for a hearing on final approval at the Court's

convenience, but no earlier than 125 days after entry of an order preliminarily approving the

settlement and 30 days after the objection/exclusion deadline, and schedule further settlement

proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 30 days following entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | Within 60 days following entry of Preliminary Approval Order |
| Exclusion/Objection Deadline | 60 days after Notice Deadline |

| ACTION | DATE |
|---|---|
| Deadline to Submit Claims | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | Within 85 days after Notice Deadline |
| Final Approval Hearing / Noting Date | No earlier than 125 after the Preliminary Approval Order is Entered |
| Final Approval Order Entered | At the Court's Discretion |

## V.  CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the settlement, including the fees and costs payments to Class Counsel; (2) provisionally certify the proposed class; (3) appoint as Settlement Class Counsel the law firms of Terrell Marshall Law Group PLLC, Berens Law LLC, and the Law Offices of Stefan Coleman LLC; (4) appoint Kathy Wornicki and Edward Laine as Settlement Class representatives; (5) approve the proposed notice plan; (6) appoint JND Legal Administration to serve as the Claims Administrator; and (7) schedule the final fairness hearing at the Court's convenience but no earlier than 125 days following entry of the Preliminary Approval Order and 30 days after the Exclusion/Objections deadline.

RESPECTFULLY SUBMITTED AND DATED this 10th day of March, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By:  /s/ Jennifer Rust Murray
           Beth E. Terrell
           Jennifer Rust Murray
           A. Janay Ferguson
           936 North 34th Street, Suite 300
           Seattle, Washington  98103-8869
           Telephone: (206) 816-6603
           Facsimile: (206) 319-5450
           Email: bterrell@terrellmarshall.com
           Email:  jmurray@terrellmarshall.com
           Email:  jferguson@terrellmarshall.com

           Jeffrey A. Berens
           BERENS LAW LLC
           2373 Central Park Boulevard, Suite 100
           Denver, Colorado  80238-2300
           Telephone: (303) 861-1764
           Facsimile:  (303) 395-0393
           Email:  jeff@jberenslaw.com

           Stefan Coleman
           LAW OFFICES OF STEFAN COLEMAN, LLC
           201 South Biscayne Boulevard, 28th Floor
           Miami, Florida  33131
           Telephone: (877) 333-9427
           Facsimile:  (888) 498-8946
           Email: law@stefancoleman.com

           *Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I, Jennifer Rust Murray, hereby certify that on March 10, 2017, I caused the foregoing

document to be electronically filed with the Clerk of the Court via the CM/ECF system, which

will send notification of such filing to the e-mail addresses denoted on the Court's Electronic

Mail Notice List.

DATED at Seattle, Washington, this 10th day of March, 2017.

TERRELL MARSHALL LAW GROUP PLLC


By:   /s/ Jennifer Rust Murray
        Jennifer Rust Murray
        936 North 34th Street, Suite 300
        Seattle, Washington  98103-8869
        Telephone: (206) 816-6603
        Facsimile: (206) 319-5450
        Email: jmurray@terrellmarshall.com

*Attorneys for Plaintiffs*