IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-03258-PAB-KMT

KATHY WORNICKI and
EDWARD LAINE, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

BROKERPRICEOPINION.COM, INC.,
FIRST VALUATION, LLC,
FIRST VALUATION SERVICES, LLC,
FIRST VALUATION TECHNOLOGY, LLC,
CARTEL ASSET MANAGEMENT, LLC,
WALTER COATS, and
VALUTECH, INC.,

    Defendants.

# ORDER

This matter is before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement [Docket No. 149]. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d).

**I. BACKGROUND**

This case arises from allegations that Brokerpriceopinion.com ("Brokerprice") failed to pay its brokers in a timely fashion. Docket No. 149 at 8-9. Defendant Brokerprice provides real estate valuation services to mortgage companies, banks, securities dealers, investment firms, and vendors for a variety of purposes. Docket No. 133 at 1. Brokerprice operates online and its brokers sign up through an online application process, submitting required brokers' licenses and other information. *Id.*

at 2. Brokers complete work orders for Brokerprice and Brokerprice in turn promises payment to its brokers within 30-45 days of when Brokerprice shipped completed orders to its clients. *Id.* Plaintiffs argue that Brokerprice fell behind on its payments and owes its brokers millions of dollars. *Id.* at 3.

Plaintiffs filed a class action complaint on December 2, 2013. Docket No. 1. Plaintiffs originally alleged claims for breach of contract and unjust enrichment under Colorado law.[1] *Id.* On October 15, 2015, plaintiffs filed a motion for class certification. Docket No. 79. Concurrently, plaintiffs moved for leave to amend the second amended complaint to add Walter Coats, the Brokerprice CEO, as a defendant and add Colorado state law claims for negligent misrepresentation and fraudulent inducement. Docket No. 81. The Court granted plaintiffs' motion. Docket No. 97.

On September 20, 2016, the Court granted plaintiffs' motion for class certification in part, certifying a class comprised of all persons and entities who provided broker price opinions on behalf of Brokerpriceopinion.com, Inc., First Valuation, LLC, First Valuation Services, LLC, First Valuation Technology, LLC, Cartel Asset Management, LLC, Walter Coats, or ValuTech, Inc. between December 2, 2007 and the date of final disposition of this action and who have not been paid for their services in accordance with defendants' terms of payment. Docket No. 133 at 30. On November 3, 2016, the Court approved the parties' proposed notice plan and ordered the parties to disseminate class notice within 14 days.[2] Docket No. 138.

---

[1] Plaintiffs amended their complaint twice. Dockets Nos. 23, 45.

[2] The Court granted the parties several extensions to disseminate class notice in order to allow the parties to attempt to mediate their dispute. Docket Nos. 141, 145,

The parties held a settlement conference before an arbitrator on December 6, 2016. Docket No. 149-2 at 12-13, ¶ 20. At the conference, defendants insisted that they would be financially unable to pay a large settlement, while plaintiffs insisted that defendants must provide complete financial information to allow plaintiffs to assess defendants' financial situation. *Id.* The parties did not reach a settlement that day, but in the wake of the conference defendants produced financial information that convinced plaintiffs that settlement was in the best interest of the class. *Id.* at 13, ¶ 20.

On March 10, 2017, plaintiffs filed their unopposed motion for preliminary approval of class action settlement. Docket No. 149.

## II. STANDARD FOR PRELIMINARY CERTIFICATION OF A SETTLEMENT CLASS

Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement or opt out of the settlement. *See In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D. Kan. 2009). In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to

---

147. The parties filed the instant motion in lieu of providing notice to the class. Docket No. 149.

class members and hold a full-scale hearing as to its fairness." *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011). A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives." *See In re Motor Fuel*, 286 F.R.D. at 492. "The standards for preliminary approval of a settlement class are not as stringent as those applied for final approval." *Id*.

## III. ANALYSIS OF PROPOSED SETTLEMENT

### A. Overview of the Settlement Agreement

The proposed settlement defines the settlement class as:

All persons preparing broker price opinions (BPOs), who on or after December 7, 2007 entered into agreements with Defendants for BPOs and who were not paid all monies owed them by Defendants under such agreements who do not request to be excluded from the Settlement.

Docket No. 149-3 at 7, ¶ 33. Under the proposed settlement agreement, defendants agree to pay a total of $1,567,000.00 over a roughly four-year period, with $135,000.00 paid up front and the remainder paid in installments. *Id.* at 7-8, ¶ 37. The payments are to be distributed as follows: (1) payments to settlement class members of $1,020,000.00, distributed on a pro rata basis among settlement class members who file timely claims; (2) payments to class counsel of up to $500,000.00 for attorneys' fees and costs[3]; (3) costs of administering the settlement, estimated to be $37,000.00; and (4) service awards of $5,000.00 each to the two class representatives. *Id.*

---

[3]The settlement is not contingent on the award of attorney's fees. Docket No. 149 at 12. Counsel intends to file a fee petition 30 days before the objection deadline so that class members can review and object to the proposed fee award. *Id.*

4

In addition to monetary relief, the settlement provides for injunctive relief to ensure that brokers are paid within 90 days for all broker price opinions that brokers complete. *Id.* at 9-11, ¶ 40. If Brokerprice misses a payment and fails to cure within 30 days, the settlement is null and void. *Id.* at 9, ¶ 38. Defendants are required to submit bi-annual reports to class counsel describing their compliance efforts. *Id.* at 9-11, ¶ 40.

### B.  Consideration of Rule 23 Factors

The Court previously found that the proposed class satisfies the requirements of Rule 23(a) and 23(b)(3). Docket No. 133 at 8-17 (finding that the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Fed. R. Civ. P. 23(a)); *id.* at 20-30 (finding that all but one of plaintiffs' claims satisfies the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3)). Accordingly, the Court incorporates those factual findings and additionally finds that certification of the proposed class is appropriate for purposes of this settlement.

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In this process, "trial judges bear the important responsibility of protecting absent class members," and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become

5

fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188. If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it was the result of arm's length negotiations; (2) it was based on sufficient discovery; (3) "the proponents of the settlement [were] experienced in similar litigation; and (4) only a small fraction of the class objected").

With respect to the first factor, the settlement in this case was reached after years of litigation and protracted arm's-length negotiations. Docket No. 149-2 at 12, ¶ 18. Before reaching a settlement, plaintiffs engaged in extensive discovery, conducted four depositions, and exchanged information regarding the financial status of Brokerprice and the other defendants. *Id.* at 11-12, ¶¶ 16-17. During settlement negotiations, defendants provided tax returns, bank statements, and other information which persuaded plaintiffs that settlement was in the best interest of the class. *Id.*

6

at 12-13, ¶ 20. The Court finds that the negotiations between the parties reflect fair and honest negotiations between two sophisticated parties.

As to the second factor, the settlement agreement appears to have been negotiated against the backdrop of defendants' financial condition. After the settlement conference, plaintiffs negotiated the material terms of the settlement including the amount of money defendants would contribute up front and in installments over the course of the 47-month period in which defendants will be paying into the settlement fund. *Id.* at 13, ¶ 21. The parties exchanged information demonstrating defendants' inability to pay a larger judgment and plaintiffs determined that, in light of defendants' financial situation, settlement was in the best interests of the class. *Id.* at 12-13, ¶ 20. Accordingly, the Court finds that the settlement reflects the factual realities of the case, which cast doubts on the benefits of further litigation.

Next, the Court must determine whether the "value of [an] immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Rutter*, 314 F.3d at 1188. The settlement was negotiated in light of defendants' ability to pay. Even if plaintiffs were successful on the merits in this case, it is unclear what judgment would be available. Moreover, the settlement provides for injunctive relief that is designed to ensure that brokers who continue to provide broker opinions to defendants are paid in an expedient manner. Docket No. 149-3 at 9-11, ¶ 40. Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.

With regard to the fourth factor, it is evident that the settling parties believe that the settlement agreement is fair and reasonable. The plaintiffs in this case are represented by experienced counsel who have extensive experience in litigating such

matters. *See* Docket No. 149-2 at 3-9, ¶¶ 3-5 (collecting cases managed by plaintiffs' counsel). Moreover, the settlement was the result of arms' length negotiations and was reached with the aid of an experienced mediator.

The Court finds that the presumption of fairness is sufficient to preliminarily approve the terms of the proposed partial settlement agreement.

## IV. NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the due process clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id*. Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted). Thus, "the legal standards for satisfying Rule

23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

The proposed notice in this case provides potential class members with information regarding the anticipated recovery under the settlement agreement, reasons for the settlement, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement. *See* Docket No. 149-3 at 27-44. The class administrator will provide notice by email to all potential class members for whom an email address is available in defendants' records. *Id.* at 14-15, ¶ 42. For any class member for whom an email address is not available, or whose email notice is returned as undeliverable, the class administrator will provide notice by sending a postcard to that class member. *Id.* If the postcard is returned as undeliverable, the class administrator will perform one skip trace to locate the class member. *Id.* In addition, the claims administrator will maintain a settlement website allowing class members to submit claims online and providing information with respect to the proposed settlement. *Id.*

The Court finds that the proposed notice plan meets the requirements of Rule 23(e)(1). Because the class members communicated with defendants primarily through email, *see* Docket No. 137 at 4, email notice is appropriate. *See Browning v. Yahoo! Inc.,* 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) (approving a notice plan's use of email notice where the class members had a demonstrated familiarity and comfort with email and the Internet). For those individuals that the class administrator

is unable to contact via email, the additional forms of notice meet the requirements of Rule 23(e)(1).[4]

Based on the foregoing, the Court is satisfied that the settling parties' proposed notice is "reasonably calculated to apprise the absent class members of the action." *In re Integra*, 262 F.3d at 1111.

## V. CONCLUSION

Accordingly, it is

**ORDERED** that Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement [Docket No. 149] is **GRANTED**. It is further

**ORDERED** that the parties' notice plan is approved. Class counsel shall send the initial class notices no later than September 1, 2017, which is 30 days from the entry of this order. It is further

**ORDERED** that class counsel shall submit a motion for class counsel's attorney's fees and costs no later than October 2, 2017, which is 61 days from the entry of this order. It is further

**ORDERED** that class members will have until October 31, 2017, which is 90 days from the entry of this order, to opt out of this action, to file a written objection, or to submit a claim. It is further

**ORDERED** that a brief in favor of final approval shall be submitted no later than November 27, 2017, which is 117 days from the entry of this order. Any responses or

---

[4] The Court previously approved a nearly identical notice plan prior to settlement. Docket No. 138.

objections to the brief in favor of final approval shall be submitted no later than 14 days from the entry of the brief. The Court will issue a separate order setting the date of the fairness hearing.

DATED August 2, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge