IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-03258-PAB-KMT

KATHY WORNICKI and
EDWARD LAINE, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

BROKERPRICEOPINION.COM, INC.,
FIRST VALUATION, LLC,
FIRST VALUATION SERVICES, LLC,
FIRST VALUATION TECHNOLOGY, LLC, and
CARTEL ASSET MANAGEMENT, LLC,
WALTER COATS, and
VALUTECH, INC.,

      Defendants.

---

## ORDER

---

This matter comes before the Court on Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Response to Objection [Docket No. 161] and Plaintiffs' Motion and Memorandum of Law in Support of An Award of Attorneys' Fees and Litigation Costs [Docket No. 159]. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(d).

## I. BACKGROUND

This case arises out of defendants' alleged failure to pay for real estate evaluations performed on behalf of Brokerpriceopinion.com, Inc. ("Brokerpriceopinion"). Docket No. 98 at 2, ¶ 2. Defendants operate Brokerpriceopinon.com, which uses licensed real estate brokers and appraisers to provide real estate valuation services.

*Id.* at 5, ¶ 19.  Real estate professionals can register on defendants' website to provide broker price opinions in exchange for a set fee ranging from $25 to $100.  *Id.*, ¶ 20. Under the terms of payment, defendants are required to pay real estate brokers within sixty days after submitted work orders are shipped to clients.  *Id.*, ¶ 21.  Plaintiffs allege that defendants have fallen behind on those payments and owe the real estate brokers amounts ranging from several hundred to several thousand dollars.  *Id.* at 6-7, ¶¶ 26-28.

Plaintiffs filed a class action complaint on December 2, 2013.  Docket No. 1.  In their operative complaint, which was filed on January 20, 2016, plaintiffs assert claims for breach of contract, promissory estoppel, unjust enrichment, fraudulent inducement, and negligent misrepresentation.  Docket No. 98 at 12-16.  Plaintiffs further request a declaratory judgment that defendants' actions are unlawful.  *Id.* at 16.

On September 20, 2016, the Court granted plaintiffs' motion for class certification in part, certifying a class of

> all persons and entities who provided broker price opinions on behalf of Brokerpriceopinion.com, Inc., First Valuation, LLC, First Valuation Services, LLC, First Valuation Technology, LLC, Cartel Asset Management, LLC, Walter Coats, or ValuTech, Inc. between December 2, 2007 and the date of final disposition of this action and who have not been paid for their services in accordance with Defendants' terms of payment.

Docket No. 133 at 30.   On November 3, 2016, the Court approved the parties' proposed notice plan.  Docket No. 138.  On March 10, 2017, plaintiffs filed an unopposed motion for preliminary approval of a class action settlement.  Docket No. 149.  The Court granted plaintiff's motion on August 2, 2017 and approved plaintiffs'

plan to disseminate notice of the settlement to class members. *See* Docket No. 155.

On October 3, 2017, plaintiffs filed a motion requesting an award of attorney's fees and

costs. Docket No. 159. On November 27, 2017, plaintiffs moved for final approval of

the parties' class action settlement. Docket No. 161. The Court held a final fairness

hearing regarding the proposed settlement on May 18, 2018. Docket No. 168.

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Overview of the Settlement Agreement

The proposed settlement agreement defines "Settlement Class Members" as:

> All persons preparing broker price opinions (BPOs), who on or after
> December 7, 2007 entered into agreements with Defendants for BPOs
> and who were not paid all monies owed them by Defendants under such
> agreements who do not request to be excluded from the Settlement.

Docket No. 149-3 at 7, ¶ 33. Under the terms of the settlement, defendants agree to

pay a total of $1,571,676.00 (the "Total Settlement Payment") over a roughly four-year

period for the benefit of approximately 24,353 class members. *Id.* at 7-8, 11-14, ¶¶ 37,

41; *see also* Docket No. 149 at 7 n.1 (revising estimate of notice and administration

expenses to $41,676); Docket No. 161 at 5 (noting that settlement requires defendants

to pay $1,571,676 for the benefit of approximately 24,353 class members). The Total

Settlement Payment is to be distributed as follows: (1) $1,020,000.00 to settlement

class members who file timely claims, with individual payments calculated on a pro rata

basis; (2) $500,000.00 to class counsel for fees and costs incurred during the litigation;

(3) $41,676 to the settlement administrator for the costs of sending class notice; and (4)

a $5,000.00 incentive payment to each of the two class representatives. *Id.*; *see also*

Docket No. 149 at 7 n.1.

The settlement also provides for substantial injunctive relief.  Docket No. 149-3 at 9-11, ¶ 40.  Specifically, the agreement requires Brokerpriceopinion to, among other things: (1) "maintain a cash reserve in the amount of $240,000 dedicated to the payment of persons completing and delivering BPOs"; (2) "pay in full within 90 days all amounts as agreed under the standard form agreement for BPOs"; (3) "train the employees in its Accounting, Quality Control and Production departments to make full payment to persons completing and delivering BPOs within 90 days"; and (4) "make a bi-annual report to Class Counsel outlining its compliance with the injunction and any issues that may have arisen."  *Id.* at 10.  If Brokerpriceopinion fails to make any payment required under the terms of the settlement agreement, the agreement is null and void.  *Id.* at 9, ¶ 38.

## B.  Notice to the Settlement Class

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound

by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted).  Thus, "[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar."  *DeJulius*, 429 F.3d at 944.

The Court finds that the parties complied with the notice plan that was approved by this Court in its ruling on plaintiffs' motion for preliminary approval of the class action settlement.  *See* Docket No. 155 at 8-10.  The settlement administrator emailed notice of the settlement to 23,803 class members for whom an email address was provided in defendants' records.  Docket No. 161-2 at 3, ¶ 9.  The settlement administrator also mailed a postcard notice to 7,117 class members whose email notice was returned or for whom only a mailing address had been provided.  *Id.* at 3-4, ¶ 11.  Of those postcard notices, 1,358 were initially returned as undeliverable.  *Id.* at 4, ¶ 13.  After conducting advanced address research, the settlement administrator re-mailed 248 notices of the undelivered notices to new addresses.  *Id.*  Plaintiffs state that, of the 23,906 class members identified in the electronic files provided by counsel, 22,665 – or 94.8% – received notice of the class action settlement.  *Id.* at 4, ¶ 14.

Consistent with its prior order, *see* Docket No. 155 at 9-10, the Court finds that the parties made reasonable efforts to identify and provide notice to all class members who would be bound by the settlement.  *See* Fed. R. Civ. P. 23(e)(1) (requiring court to

"direct notice in a reasonable member to all class members who would be bound by the proposal"); *Tennille v. W. Union Co.*, 785 F.3d 422, 438-39 (10th Cir. 2015) (finding that mailing of settlement notice to addresses updated through post office's change-of-address database was sufficient under Rule 23 and Due Process*)*; *DeJulius*, 429 F.3d at 944 (noting that  Due Process inquiry "focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort" (internal quotation marks omitted)).  Moreover, the notice itself contained information regarding the nature of the lawsuit, the definition of the class, class members' anticipated recovery under the settlement, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement.  *See* Docket No. 161-2 at 16-22; *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing information to be included in notice).  The notice also directed class members to a toll-free number and a settlement website for additional information regarding the settlement.  *See* Docket No. 161-2 at 19, 22; *see also Tennille*, 785 F.3d at 437 (finding that "notice satisfied due process by informing class members of several ways they could obtain information about the claims they would be releasing if they joined the settlement").  The fact that there were 17,457 visits to the settlement website as of November 17, 2017 and 8,910 claim forms filed is further evidence that the notice was sufficient to apprise class members of their rights and obligations under the settlement.  *See* Docket No. 161-2 at 5, ¶¶ 18, 20.

Based on the foregoing, the Court is satisfied that the notice provided to class members met the requirements of Rule 23(e) and Due Process.

## C.  Analysis of Rule 23 Factors[1]

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In this process, "trial judges bear the important responsibility of protecting absent class members," and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig*., 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).  To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable."  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)

---

[1]This Court previously found that certification of the proposed class was appropriate for purposes of the parties' settlement.  Docket No. 155 at 5.  The Court incorporates that finding herein.

(applying an "initial presumption of fairness" to a proposed settlement where: (1) it was the result of arm's length negotiations; (2) it was based on sufficient discovery; (3) "the proponents of the settlement [were] experienced in similar litigation; and (4) only a small fraction of the class objected").

With regard to the first factor, the Court finds no evidence of collusion.  This case has been pending for nearly five years, during which time the parties have briefed several motions and engaged in extensive discovery regarding defendants' financial condition.  *See* Docket No. 161 at 9; Docket No. 159-1 at 11, ¶¶ 14-15; Docket No. 149-2 at 12, ¶¶ 17-18.  While the parties participated in a settlement conference on December 6, 2016, plaintiffs did not agree to settle their claims until after defendants had provided additional documentation showing that they would be unable to pay a large judgment.  *See* Docket No. 161 at 9; Docket No. 149-2 at 12-13, ¶ 20.  As class counsel explained at the final fairness hearing, plaintiffs faced a "Hobson's choice" of pursuing their claims and putting defendants out of business, or agreeing to a structured settlement that would allow for some recovery by class members.  Based on the information provided, the Court is satisfied that the parties' settlement is the product of fair and honest negotiations between the parties.  *See Reiskin v. Reg'l Transp. Dist. Colo.*, No. 14-cv-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (finding that class settlement was fairly and honestly negotiated where "case involved intensive discovery," "expert witness reports," depositions, and "[n]umerous motions"); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (finding that settlement was fairly and honestly negotiated where the case was "litigated over the course of six years, during which time both parties engaged in extensive written and deposition

8

discovery, filed a number of contested discovery motions, and filed more than a dozen briefs").

The Court also finds that there are serious questions of law and fact in this case that likely would have affected plaintiffs' chance at recovery.  As class counsel explained at the fairness hearing, the financial information disclosed by defendants during discovery indicated that defendants would not have been able to pay a large lump sum judgment.  Plaintiffs further aver in their motion for final settlement approval that they would have had to undertake the difficult task of piercing the corporate veil in order to obtain any recovery at all for the plaintiff class.  *See* Docket No. 161 at 10. Given the real prospect that plaintiffs would not have obtained any recovery had the case proceeded to trial, the Court finds that this factor weighs in favor of approving the parties' settlement agreement.

The Court next considers whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.  Under the parties' settlement agreement, class members will receive a pro rata share of $1,020,000.  *See* Docket No. 149-3 at 7-8, 11-14, ¶¶ 37, 41.  The settlement also provides for meaningful injunctive relief, including a requirement that defendants "pay in full within 90 days all amounts as agreed under the standard form agreement for BPOs" and "maintain a cash reserve in the amount of $240,000 dedicated to the payment of persons completing and delivering BPOs."  *Id.* at 10, ¶ 40(c)-(d).  Given the uncertainty surrounding class members' ability to recover on a lump sum judgment, the Court finds that the immediate recovery provided for in the parties' settlement agreement outweighs the possibility of greater future relief.

9

The fourth factor also weighs in favor of final approval of the parties' settlement. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018) (quoting *Lucas*, 234 F.R.D. at 695).  Here, class counsel has extensive experience representing plaintiffs in class actions.  *See* Docket No. 159-1 at 5-8, 10-11, ¶¶ 8, 10, 12-13; Docket No. 159-2 at 5; Docket No. 159-3 at 6-7.  At the fairness hearing, counsel for both sides expressed their judgment that the settlement is fair, adequate, and reasonable.

Finally, only seven class members requested exclusion from the settlement, and only one class member submitted what could be construed as an objection to the settlement.  *See* Docket No. 161 at 5.  Class members' largely positive response to the settlement is further evidence that it is fair, adequate, and reasonable.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that the fact that "only a small number of objections are received . . . can be viewed as indicative of the adequacy of the settlement" (internal quotation marks omitted)).

### D.  Objection

Only one individual has filed a letter that could be construed as an objection to the parties' settlement.  On October 30, 2017, Mr. Donald Oneida filed a letter with the Court stating that he was not informed of the lawsuit until August 2, 2017 and indicating a belief that the lawsuit caused defendants to stop making payments on his BPOs.  *See* Docket No. 160 at 1.  He further expresses frustration that "the attorneys are getting paid for their work" while class members are "get[ting] pennies on the dollar" and "taking

10

losses." *Id.* The Court finds Mr. Oneida's objections misplaced.  As plaintiffs explain in their motion, defendants have a long history of failing to pay brokers for work performed on behalf of Brokerpriceopinion.  *See* Docket No. 161 at 14.  Thus, defendants' failure to compensate Mr. Oneida for his BPOs is not attributable to the parties' settlement agreement.  In fact, the settlement will benefit class members like Mr. Oneida by requiring defendants to pay their brokers within ninety days.

Mr. Oneida also notes that the settlement will not fully compensate class members for their losses.  While Mr. Oneida is correct, this is a common reality of settlement.  *See, e.g.*, *Tennille*, 785 F.3d at 434-35 (finding settlement fair and reasonable despite possibility that class members would not recover the full amount owed to them); *see also Antrim v. Burlington N., Inc.*, 847 F.2d 375, 378 (7th Cir. 1988) ("[A]ny settlement is a compromise in which each side gets less than its maximum objective.").  Moreover, the Court has already determined that the settlement is reasonable in light of the substantial possibility that class members would not obtain any recovery at all were this case to proceed to trial.  For these reasons, Mr. Oneida's objections are overruled.

## III.  ATTORNEY'S FEE AWARD

Class counsel request an award of attorney's fees and costs in the amount of $500,000, which is 32% of the total settlement amount.  *See* Docket No. 159 at 2. Because plaintiffs' claims arise under Colorado law,[2] Colorado law governs both the

---

[2]Although the complaint does not specifically allege that plaintiffs' claims arise under Colorado law, *see generally* Docket No. 98, the parties' briefing on defendants' motion to dismiss indicates that Colorado law applies.  *See* Docket No. 50 at 4 (arguing that plaintiffs' claims are subject to the three-year statute of limitations under Colo. Rev.

propriety of an attorney's fee award and the method of calculating a reasonable fee. *See Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 462 (10th Cir. 2017) (holding that, in a class action lawsuit asserting state law claims, state law governs "the propriety of granting a fee award" and "how the amount of the fee is to be calculated").

Colorado law generally prohibits the recovery of attorney's fees "in the absence of an express statute, court rule, or private contract to the contrary." *Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1015 (Colo. 2003). The common fund doctrine is an exception to this rule. *Id.* Under that doctrine, which "is grounded in equitable principles of quantum meruit and unjust enrichment[,] . . . . a court needs no legislative support to award fees" to attorneys who obtain a common fund for the benefit of others. *Brody v. Hellman*, 167 P.3d 192, 198 (Colo. App. 2007) (internal quotation marks omitted).

Like federal courts in this Circuit, Colorado courts recognize two methods for calculating attorney's fees in a common fund case: the lodestar method and the percentage method. *Id.* at 201.[3] In 2007, however, the Colorado Court of Appeals noted a "recent trend . . . toward using the percentage method in common fund cases." *Id.* at 201 (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994)). The Court will therefore "use the percentage method and then crosscheck the adequacy of the

Stat. § 13-80-101); Docket No. 51 at 5 (arguing that claims are governed by six-year statute of limitations under Colo. Rev. Stat. § 13-80-103.5(1)(a)).

[3]Under the lodestar method, "the court multiplies the number of hours the attorneys reasonably worked by the reasonable hourly rate for that work" to determine a reasonable fee. *Id.*

12

resulting fee by applying the lodestar method." *Id.*[4]

In determining the reasonableness of a percentage award in a common fund case, Colorado courts apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 200 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated in part on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see also Finkel v. Am. Oil & Gas, Inc.*, No. 10-cv-01808-CMA-MEH, 2012 WL 171038, at *2 n.7 (D. Colo. Jan. 20, 2012) (noting that Colorado Courts apply the *Johnson* factors in determining the reasonableness of attorney's fees in class actions). The Court finds that the factors relevant in this case weigh in favor of approving the requested fee award.[5]

---

[4]Because the lodestar method will be "used as a mere crosscheck of the percentage method," the Court "does not need to scrutinize exhaustively the hours documented by counsel." *Id.* at 204 (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d. Cir. 2000).

[5]Class counsel has not provided any argument on the fourth, seventh, and eleventh *Johnson* factors. The Court agrees that the seventh and eleventh factors are not relevant in this case. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455-56 (10th Cir. 1988) ("[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation."). With regard to the remaining factors, the Court finds it appropriate to look to federal district court cases evaluating the reasonableness of fee awards because the same analysis applies under both state and federal law.

**A.  Time and Labor Required**

Class counsel represent that they have spent four years and over 2,085 hours litigating this case.  *See* Docket No. 159 at 6; Docket No. 159-1 at 4-5, ¶ 7; Docket No. 159-2 at 2, ¶ 4; Docket No. 159-3 at 2-3, ¶ 4.  They have filed many motions and engaged in extensive discovery involving nine sets of written discovery requests, seven depositions, and a review of thousands of pages of documents pertaining to defendants' financial condition.  *See* Docket No. 159 at 6; Docket No. 159-1 at 11, ¶ 14. In attempting to assess defendants' ability to satisfy a large judgment, counsel consulted a database expert and forensic accountant.  Docket No. 159-1 at 11, ¶¶ 14-15.  Finally, class counsel took the lead in drafting a settlement agreement that would allow defendants to stay solvent while providing class members with monetary and injunctive relief.  *See id.* at 12, ¶ 17.  Given the substantial amount of time invested in this case by class counsel, the Court finds that the time and labor factor weighs in favor of plaintiffs' requested fee award.

**B.  Novelty and Difficulty of the Questions Presented**

Class counsel represented at the fairness hearing that, while there was clear liability on the part of defendants, the real issue in the case was plaintiffs' ability to collect on a large judgment.  In evaluating the risks of proceeding to trial, class counsel had to navigate difficult issues regarding the business relationships between the various defendants and the likelihood of piercing the corporate veil.  *See* Docket No. 159 at 9. This factor therefore weighs in favor of the requested award.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo. 2009) (noting

14

that, although the area of law was not novel, the difficulty and complexity of the issues

in the case supported a "generous award of attorney fees").

### C.  Skill Required and Experience of Plaintiffs' Counsel

The Court will consider the third and ninth *Johnson* factors together.  *See, e.g.*,

*id.* (noting that the second, third, and ninth *Johnson* factors are closely related).  As

evidenced by their declarations, class counsel have extensive experience representing

plaintiffs in class action lawsuits.  *See* Docket No. 159-1 at 5-8, 10-11, ¶¶ 8, 10, 12-13;

Docket No. 159-2 at 5; Docket No. 159-3 at 6-7.   Accordingly, class counsel was well

equipped to address the unique challenges that defendants' financial condition and

business relationships posed to plaintiffs' ability to recover in this case.  Not only did

class counsel overcome defendants' opposition to class certification, but they also

negotiated a structured settlement that provides meaningful recovery for the plaintiff

class.  The "skill" and "experience" factors therefore weigh in favor of the requested fee

award.

### D.  Preclusion of Other Employment

Because counsel does not address the issue, the fourth *Johnson* factor does not

weigh heavily in the Court's analysis.

### E.  The Customary Fee/Awards in Similar Cases

The Court considers factors five and twelve together.  Courts in this District have

recognized that "[t]he customary fee to class counsel in a common fund settlement is

approximately one-third of the economic benefit bestowed on the class."  *Anderson v.*

*Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *3 (D. Colo. Oct.

20, 2009); see also *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable"); *Brody*, 167 P.3d at 203 (collecting cases approving percentage fees ranging from 24% to 36% of the common fund).  Plaintiffs in this case seek $500,000 in attorney's fees and costs, or 32% of the total settlement amount.  The Court finds this amount to be in line with the customary fees and awards in similar cases. The fifth and twelfth *Johnson* factors therefore weigh in favor of approval.

## F.  Fixed or Contingent Nature of the Fee

While the parties have not presented any evidence of a prearranged fee, class counsel undertook the representation on a contingency basis.  Docket No. 159-1 at 16, ¶ 35.  Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award.  *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct. 30, 2014).[6]

---

[6]While courts have consistently interpreted this factor as an inquiry into the fixed or contingent nature of the fee arrangement, the Supreme Court has indicated that "a careful reading of *Johnson* shows that the contingency factor was meant to focus judicial scrutiny solely on the existence of any contract for attorney's fees which may have been executed between the party and the attorney."  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (plurality op.), *abrogated in part on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).  However, even if this factor is interpreted as focusing on the specific fee quoted to plaintiffs at the outset of the litigation, the Court finds that the apparent absence of any prearranged fee weighs in favor of the requested award.  *See id.* ("The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." (internal quotation marks omitted)); *Johnson*,

### G.  Amount Involved and the Results Obtained

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained."  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted).  Here, class counsel recovered $1,020,000 on behalf of 24,353 settlement class members.  *See* Docket No. 161 at 5, 11.  This amount will be distributed, on a pro rata basis, among those class members who file timely claims.  *Id.* at 11.  In addition, the settlement requires defendants to pay brokers within ninety days of a completed BPO, maintain a fund dedicated to such payment, and train staff in timely payment practices.  At the fairness hearing, counsel for both sides agreed that there was a real possibility plaintiffs would not have obtained any recovery had the case proceeded to trial.  Given that risk, the Court finds that the combination of monetary and injunctive relief provided by the settlement represents an excellent result for the settlement class.  *See Brown*, 838 F.2d at 456 (finding that the results obtained by the settlement "may be given greater weight [in the *Johnson* analysis] when . . . the trial judge determines that the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class"); *Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement).  Accordingly, the eighth *Johnson* factor strongly supports the requested fee

---

488 F.2d at 718 (indicating that fee amount agreed upon at outset of litigation is a factor to be considered in determining reasonableness of requested fee); *Brody*, 167 P.3d at 200-01 (finding that *Johnson* factors weighed in favor of fee award where "there was no prearranged fee other than an understanding the fee would be contingent on the outcome").

award.

### H.  The Undesirability of the Case

Class counsel states that, "[a]lthough this [was] not a securities case that would require counsel to pay potentially hundreds of thousands of dollars in up-front litigation costs, the costs were not insubstantial."  Docket No. 159 at 12.  Among other expenses, class counsel consulted two experts during the litigation, one of whom assisted in the class certification process.  The Court agrees that counsel's $34,000 in out-of-pocket costs was not an insubstantial financial burden, given the significant risk that plaintiffs would be unable to obtain any recovery from defendants even if they prevailed on the merits.  The relative undesirability of this case therefore weighs in favor of the requested fee award.  *See In re Qwest*, 625 F. Supp. 2d at 1152-53 (finding that risk borne by lead counsel was key factor in assessing desirability of the case).

### I.  Lodestar Crosscheck

Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount.  *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *see also Brody*, 167 P.3d at 201 (noting that, "[t]ypically, courts use the percentage method and then crosscheck the adequacy of the resulting fee by applying the lodestar method").  Class counsel seek $500,000 in attorney's fees and costs for approximately 2,085 hours spent on the litigation.  The requested fee reflects a 0.81 negative multiplier on counsel's $619,891.50 lodestar amount.[7]

---

[7]While class counsel calculated the lodestar multiplier based on the requested award of attorney's fees and costs, the attorney's fee alone – $466,000 – reflects a negative multiplier of 0.75.

The Court finds the number of hours expended on this case to be reasonable given that the litigation has been ongoing since 2014 and has involved multiple motions, extensive discovery, and settlement negotiations.[8]  The hourly rates charged by the attorneys and staff members, which range from $75 to $595 an hour, are also generally consistent with the rates charged in other cases in this District.  *See Shaw*, 2015 WL 1867861, at *8 (approving of hourly rates ranging from $150 to $675 per hour for attorneys and staff members involved in litigation); *Lucas*, 2006 WL 2729260, at *5 (finding hourly rates of $330 and $275 for attorneys and blended average rate of $110 per hour for paralegals to be consistent with prevailing rates in the Denver community).  Even if some of the rates are slightly higher than the rates customarily charged in this area, the negative 0.81 multiplier is far lower than the lodestar multipliers that have been approved in other class action cases in this District.  *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8 (finding lodestar multiplier of 1.37 to be "significantly lower than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases"); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6).  Accordingly, the lodestar crosscheck supports the reasonableness of the requested fee.[9]

---

[8]Although class counsel has not submitted detailed billing records, the Colorado Court of Appeals has stated that, when "the lodestar method is used as a mere crosscheck of the percentage method, the court does not need to scrutinize exhaustively the hours documented by counsel."  *Brody*, 167 P.3d at 204.

[9]Class counsel's fee petition was also filed well in advance of the objection deadline.  *See* Docket No. 155 (setting October 31, 2017 as class members' deadline to object to settlement agreement); Docket Nos. 157, 159 (motion for attorney's fees

## IV.  COSTS

Class counsel's requested fee award includes $34,000 in out-of-pocket litigation

expenses.  *See* Docket No. 159 at 3; Docket No. 159-1 at 16-17.  While counsel states

that they are not seeking "separate reimbursement for the out-of-pocket litigation costs

they incurred during this litigation," Docket No. 159-1 at 16, and the Court finds a

$500,000 total fee to be reasonable under the percentage method, the Court also

concludes that $34,000 in litigation expenses is independently reasonable in the

context of this case.

"Expenses are compensable in a common fund case if the particular costs are

the type typically billed by attorneys to paying clients in the marketplace."  *Brody*, 167

P.3d at 205-06 (citing *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty.,

Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993)).  Here, the requested costs include $34.50

for computer research, $1,001.27 in process/mailing expenses, $4,328.65 in electronic

document production costs, $13,937.50 in expert costs, $472.00 in filing fees,

$4,576.82 in travel, lodging, and meals, $1,631.25 in mediation costs, $125 in

professional fees, $7,854.65 for transcripts, and $122.46 for reproductions.  Docket No.

159-1 at 16-17, ¶ 37.[10]  Class counsel avers that these costs are based on

contemporaneous expense records and are of the type "customarily charged to and

paid by hourly clients."  *Id.* at 16-17, ¶¶ 37-38.  The Court agrees.  *See In re Crocs, Inc.

_____

and costs initially filed on October 2, 2017).  The fact that only one individual filed an
objection is further evidence that the requested fees are reasonable.

[10]Counsel's out-of-pocket litigation expenses actually total $34,484.10.  *See*
Docket No. 159-1 at 17, ¶ 37; Docket No. 159-3 at 4, ¶ 6.

20

*Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014) (finding fees for computer research, investigation, and experts/consultants to be "of the type normally billed to clients").  The Court also finds that there have been no objections to counsel's request for costs and that the costs are reasonable given the nature and duration of this lawsuit.  *See Shaw*, 2015 WL 1867861, at *8 (awarding $62,388.58 in litigation expenses in wage-and-hour class action lawsuit).

## V.  INCENTIVE FEES[11]

Plaintiffs request approval of a $5,000 incentive fee for each of the two class representatives.  Docket No. 161 at 12.  "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case."  *Chieftain Royalty Co.*, 888 F.3d at 468.  "The award should be proportional to the contribution of the plaintiff."  *Id.*  Here, class counsel states that the representatives (1) "assisted with the investigation and provided key factual information for the Complaint," (2) "responded to Defendants' extensive written discovery requests," and (3) "reviewed the Settlement Agreement and asked important questions about its terms."  Docket No. 159-1 at 18, ¶ 42.  Based on the information provided by class counsel and the fact that this case has been pending for almost five years, the Court predicts that the Colorado Supreme Court would find a $5,000 incentive award

---

[11]As with the attorney's fee award, the Court must apply Colorado law to determine the reasonableness of the requested incentive fees.  *See Chieftain Royalty Co.*, 888 F.3d at 468.  However, because the Court has not found any Colorado state court cases addressing the reasonableness of incentive fees, the Court will look "to other state court decisions, federal decisions, and the general weight and trend of authority" to predict how the Colorado Supreme Court would rule.  *Id.* (internal quotation marks omitted).

reasonable compensation for the class representatives' active participation in the lawsuit.  *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding that $7500 service award was "appropriate and . . . commensurate with awards in similar cases").

## VI.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion and Memorandum of Law in Support of an Award of Attorneys' Fees and Litigation Costs [Docket No. 159] and Unopposed Motion for Final Approval of Class Action Settlement [Docket No. 161] are **GRANTED**.  The Court will issue a separate order setting forth the terms of the judgment.

DATED September 20, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge